## STATE ROADS COMMISSION OF MARYLAND
### v. ORLEANS, ET AL.

[No. 371, September Term, 1964.]

*Decided June 29, 1965.*

The cause was argued before PRESCOTT, C. J., and HAM-MOND, MARBURY, SYBERT and OPPENHEIMER, JJ.

*Alger Y. Barbee* and *Joseph D. Buscher, Special Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Guy J. Cicone, Special Attorney,* on the brief, for appellant.

*Warren Browning* for appellees.

HAMMOND, J., delivered the opinion of the Court.

The bone of contention in this case is the time when the value of property taken from the appellees by the State Roads Commission for use in the major improvement of River Road in Montgomery County is to be determined.

The proceedings which the State instituted under the "immediate taking" provisions of Code (1964 Rep. Vol.), Art. 89B, Secs. 9-20, were extended over a period of years. The plats showing the location and length of the road reconstruction and the width of the right-of-way, as well as the property lines of the owners whose lands would be affected and the fee simple and easement areas to be acquired, prepared as required by Art. 89B, Secs. 11 and 13, were duly filed as directed by Sec. 14 on October 3, 1961. Several weeks before, on September 19, the Commission deposited with the clerk of the Circuit Court of Montgomery County some $22,000, its estimate of the fair value of the property to be taken, in part in fee and in part as an easement. Work on the project began on October 24, 1961, and on December 13, 1961, excavation for a box culvert was begun on or in front of the property of the appellees. All the work of rehabilitation of River Road was completed on May 25, 1963.

The Commission followed the direction of Sec. 15 of Art. 89B, that after the filing of the plats and the payment of its

estimate of the fair value into court (and after, in many cases, the taking of possession), it "* * * shall proceed to negotiate with the property owners whose property is affected in an effort to obtain by amicable negotiation * * *" such right, title and interests as the plats show to be necessary. Sec. 15 goes on to provide that "the value of the land and rights to be acquired shall be determined as of the date the plats or maps are recorded and the monies heretofore provided paid to the property owner or into court, and if both be not done on the same date, the value of the property shall be determined as of the date of the latter."

The negotiations proved fruitless and on March 16, 1962, the owners availed themselves of the provisions of then Maryland Rule U16 (Rules U15 to U20 first took effect on January 1, 1962, now Maryland Rule U27 b 1) that: "* * * any party may have the case referred to the Board of Property Review by filing a notice in writing with the clerk of the court."

The Board did not hear the case until January 10, 1963 (apparently because of rapidly repeated turnovers in composition). Neither the owners nor the Commission requested a postponement of or delay in the hearing and neither invoked the right given by then Maryland Rule U17 c (now U27 e) to have the case returned to the court for the filing of a condemnation proceeding by the Commission by so requesting, if the case has been unheard by the Board for three months after referral to it.

The Board decided the case on February 12, 1963, determining value as of "the date of the filing of the plats and maps as aforesaid," as provided by Sec. 17 (f) of Art. 89B. The property owners were aggrieved by the amount of the award and on March 1, 1963, filed notice of dissatisfaction with the clerk of the Circuit Court of Montgomery County under then Maryland Rule U20 a (now Rule U27 f 1). The Commission did not meet its obligation under Maryland Rule U20 b (now Rule U27 f 2) to institute a condemnation proceeding "within thirty days after a notice of dissatisfaction is filed * * *," but on May 13 prepared condemnation plats and on May 21, 1963, some eighty-one days after the filing of the notice of dissatisfaction, instituted condemnation proceedings.

The case came on for trial on April 13, 1964, and it became clear after the opening statements that the Commission felt that proper date of valuation of the property was 1961 and the property owners that it was 1964. This difference of opinion flowed from the provisions of Code (1964 Repl. Vol.), Art. 89B, Sec. 18, which spells out the basic right of an owner, dissatisfied with the award of the Board, to have the Commission promptly file a condemnation case in the appropriate court, and then provides:

> "If the Commission shall have failed to acquire title to the property and ascertained the amount to be paid for same within one year from the date the plats or maps are recorded, as aforesaid, or have failed to file a condemnation suit in the proper court, as aforesaid, then, and in such case, the value of the property shall no longer be determined as of the date the plats or maps were recorded but shall be determined as of the time of acquisition unless the value be less at the time of acquisition and then, in such cases, the value shall be determined as of the recordation date."

The Commission reads the phrase "time of acquisition" to mean the time of actual taking of possession and the property owners read it to mean the time of acquisition of legal title. Judge Pugh, in June 1964, acting under Maryland Rule 502, ruled preliminarily as a matter of law that the time of valuation intended by the statute was the time of the trial, that is, the time of the acquiring of legal title.

When the case was tried on the merits in November 1964, the jury heard expert testimony that entirely apart from any appreciation caused by the improvement of River Road the property involved had at least doubled in value between 1961 and 1964, and heard various estimates of 1964 value from realtors who had been employed by the property owners and the State, respectively, including the opinion that a rezoning of part of the property from residential to commercial would have been likely if there had been no taking. The State says that allowing this opinion was error as was the striking of the testimony

of an expert for the State of 1961 value, which had come in without objection.

The jury's verdict reflected the views of the owners' experts as to 1964 values, and the Commission has appealed.

We think the legislative purpose revealed by the history and wording of Secs. 9-20 of Art. 89B was that if the Commission took too long to acquire title and pay the full amount of compensation due for the taking, the valuation date of the property taken was not to be the time the maps and plats were recorded, as ordinarily it would be, but rather the date legal title was acquired.

Secs. 10-20 of Art. 89B were originally enacted by Ch. 59 of the Laws of 1956. They require the filing of plats and the payments or deposits of the estimated value of property for an entire section of a road project so as to freeze simultaneously the value of all properties in the path of such a project. They call for negotiation thereafter with the owners and, if there is failure to agree within six months after the plats are recorded and the money provided for, for certification to the Property Review Board (such certification was originally provided for by Sec. 16 of Art. 89B, and now is under Maryland Rule U27 b 1).

The Board first had to decide the case within five months after certification under Sec. 17 f of Art. 89B but now, by virtue of amendments made by Ch. 36 of the Laws of 1962 and the promulgation of Maryland Rule U27 c 1, it has only three months for a hearing and an additional month to make an award (Rule U27 d). If the case is not heard by the Board within three months or if an award is not made within thirty days after the hearing, either side may order the matter sent to court for the filing of a condemnation petition, under Maryland Rule U27 e. Under Sec. 18 of Art. 89B, as originally enacted, either the Commission or the property owner could "appeal" within thirty days to the Circuit Court from an award of the Board and, upon appeal, the case was to be heard and determined under the procedures of Articles 89B and 33A of the Code. If the property owner sought the appeal, he was to notify the Commission in writing and thereupon it became the duty of the Commission to file the condemnation suit in the

proper court. (It was held in *Volz v. State Roads Commission,* 221 Md. 209, that the statute meant simply that either side may bring about the filing of a condemnation suit in the Circuit Court and have it heard as a new and independent action and that the "appeal" was the condemnation case.) Sec. 18, as originally enacted, then used the words quoted above and here to be construed that, if title were not acquired within one year or a condemnation suit not filed, "as aforesaid," the valuation date was not to be the recordation date but the "time of acquisition."

After the Court of Appeals put Rules U15 to U20 in effect on January 1, 1962, the Legislature, by Ch. 36 of the Laws of 1962, effective June 1, 1962, repealed those procedural parts of Sec. 18 of Art. 89B which were covered by Rules U15 to U20, leaving the provisions here in question as to failure to acquire title or file suit unaffected. Rule U20 gave any party dissatisfied with an award of the Board the right within thirty days to require the filing of a condemnation petition in court and required the condemnor, unless it previously had done so, to file a condemnation case within thirty days after notice of dissatisfaction has been filed with the clerk.

There are at least two possible interpretations of what the Legislature meant in Sec. 18 of Art. 89B by the phrase "* * * or have failed to file a condemnation suit in the proper court, as aforesaid * * *" following the words "if the Commission shall have failed to acquire title to the property and ascertained the amount to be paid for same within one year from the date the plats or maps are recorded, as aforesaid * * *."

Judge Menchine in the Circuit Court for Baltimore County (Condemnation Docket No. 4, Folio 87, Case No. 668) held on one aspect of the case which came to this Court as *Volz v. State Roads Commission, supra,* as follows:

> "The Court's position is that the record establishes that the condemnation suit was not filed until October 31, 1958; whereas the plats were filed on May 21, 1957. Therefore, the Petition of Condemnation, not having been filed within one year from the date of the plats, has no effect upon the penal provisions of Section 18 for the reason that the Court interprets those

provisions as requiring either the acquisition of title
or the filing of a condemnation suit within one year."

Judge Menchine also said:

> "It is the view of the Court that the plain intent and
> purpose of the quoted language of Section 18 is to re-
> quire the State to acquire title and pay for the land
> within one year or be subject to the added expense of
> increases in market value without regard to whether
> the State has entered upon or has not entered upon the
> property * * *."

The Commission did not appeal these rulings of Judge Men-
chine and when the property owner appealed a ruling on an-
other aspect of the case, did not cross-appeal.

Judge Barrett, in the Circuit Court for Baltimore County,
followed Judge Menchine's views on both points in a careful
and thoughtful opinion filed November 8, 1962, in the case of
*State Roads Commission v. Smuck*, Baltimore County Con-
demnation Docket No. 4, Folio 20, Case No. 610. Again the
State did not appeal.

A conclusion that the Legislature meant by Sec. 18 of Art.
89B to require the filing of a condemnation suit within one year,
if the recordation date was to continue to be the date of valua-
tion, is militated against by two factors. First, the section does
not explicitly say this since it specifically relates the extrajudi-
cial acquisition of title to one year "from the date the plats or
maps are recorded, as aforesaid," and then, alternatively, per-
mits filing of the condemnation suit in the proper court, "as
aforesaid." As the section was originally enacted, the phrase
"as aforesaid" following the reference to the "condemnation
suit" would seem to have referred to the prior procedural pro-
visions of Sec. 18, now transferred to the rules. Second, as
Secs. 10-20 of Art. 89B were originally enacted by Ch. 59 of
the Laws of 1956 more than a year could elapse under the ex-
press permission of the statutes before the Commission was re-
quired to file a condemnation suit. The original Sec. 16 (now
repealed and replaced by Rule U27 b 1) provided that negotia-
tion with the property owner could proceed for six months from

the recording of the plats, if necessary, and within thirty days from the end of the six months' period the Commission was to certify the case to the Board. Sec. 17 provided, inter alia, that all cases certified to the Board should be "* * * disposed of and terminated not more than five (5) months after being certified * * *." Sec. 18 gave the property owner the right within thirty days to require the filing of a condemnation suit and, inferentially at least (*cf.* Sec. 9 of Art. 89B), gave the Commission thirty more days after notice of dissatisfaction by the property owner within which to file suit. Seven months for certification, five months for decision by the Board, and two months for filing suit added up to fourteen months, and this permissible period for proceeding casts doubt, at least, that the Legislature meant to require condemnation within a year.

A second reasonable reading of Sec. 18 is that it gives the Commission one year to acquire title to and pay for the land taken by agreement with the owner or acquiescence in the Board's award and thirty days after the award of the Board, if the Commission is dissatisfied, or thirty days after the filing of notice of dissatisfaction by the owner, within which to file suit. On this reading of the section, the words "as aforesaid" following the reference to the filing of suit would refer to the procedural provisions as to manner and time of filing suit of Rule U27. On February 3, 1964, Judge Barrett held in a written opinion in *State Roads Commission v. McCaffrey, et al.,* Baltimore County Condemnation Docket No. 6, Folio 110, Case No. 1019, that since the Commission did not file a condemnation suit within thirty days of the filing of notice of dissatisfaction by the property owner, the date of valuation was the date of the trial and not the date of the filing of the plats and the deposit in court of the estimated value of the land. The Commission did not appeal this ruling by Judge Barrett.

In the case before us the Commission neither acquired title within a year from the recording of the plats, nor filed suit within that time, and further did not file suit within thirty days of the filing of the owners' notice of dissatisfaction.

The Commission, apparently on the premises, first, that the year provision applies to the filing of suit and, second, that the thirty-day requirement of Rule U27 is directory rather than

mandatory, seeks to avoid the effect of its defaults by arguing that the delay was due to the inaction of the Board, and that the Board is a creature or arm of the courts over which the Commission has no control. If the argument as to the year provision otherwise had merit, it can nevertheless not prevail because of the insuperable barrier of the Commission's right under Rule U27 e, which it failed to exercise, to have the case returned to court for the filing of a condemnation suit because the Board had not heard the case within three months after it had been referred, and it cannot prevail on the thirty-day point because that provision is mandatory, in our opinion.

The decisive point in the case evolves, therefore, as to what the Legislature meant in Sec. 18 by the words "time of acquisition." Do the words mean time of taking of possession, as the State argues, or time of acquiring legal title, as the owners contend and as Judge Pugh held in this case (as did Judges Menchine and Barrett in the other cases referred to earlier) ? We think it clear that the intended meaning was the time of acquiring legal title. Primarily, the word acquisition "implies ownership and involves title, legal or equitable." See 1 C. J. S. *Acquisition* p. 920; *Federal Trade Commission v. Thatcher Mfg. Co.* (9th Cir.), 5 F. 2d 615, in which it was said it involved title "legal and equitable"; and *Scribner v. Wikstrom* (N. H.), 34 A. 2d 658.

This Court said in *Weinberg v. B. & A. Railroad Co.,* 200 Md. 160, that the word "acquire" means to become an owner of property and "in the final 'analysis' imports 'ownership' " although the holding was that the ownership could be less than a fee. Other courts have held that "acquisition" in the context there involved could mean the point of the inception of a title later perfected or formalized. *Hollingsworth v. Hicks* (N. M.), 258 P. 2d 724; *Chandler v. Field* (D. C., N. H.), 58 F. 2d 370.

Inasmuch as the taking of property occurs as a matter of law under the immediate possession statutes when the Commission actually enters upon the property and appropriates it, or a part of it, to highway purposes, *LaFontaine's Heirs,* 205 Md. 311, and after the taking the State cannot abandon the property taken and must pay the owner just compensation,

either agreed upon or judicially determined, *Concannon v. State Roads Comm.,* 231 Md. 87, the plausible argument can be made that by virtue of the statutes and decisions interpreting them a sort of contract of sale for the property taken, at a price which although it is subsequently to be set must ultimately be paid, comes into being at the time of the taking and therefore there is then an acquisition of the land. We think there are too many indications in the statutes that the Legislature used the term "time of acquisition" to mean the point at which legal title was acquired to permit that argument to prevail.

In the first place a main purpose of the "quick-take" statutes was to permit entry upon and highway use of property as soon as its value was frozen as of the date of the recordation of the plats. The Legislature obviously must have foreseen that in almost every case the physical taking would either be simultaneous with the recording (in which case there could be but one valuation date) or follow so shortly that there would be little likelihood of any rise in value between the date of recordation and the date of the taking. This makes it highly unlikely that the "time of acquisition" was intended to mean the time of physical taking.

In the second place, in Sec. 18 the phrase "fail to acquire title" is used just before "time of acquisition" appears, and since the Legislature was making failure to acquire title within a year a default which required the paying of a higher valuation, it would seem very probable that it then used "time of acquisition" to mean the point at which the title, which is to be paid for, was acquired.

In the third place, throughout Secs. 9 to 20 of Art. 89B the lawmakers appear to have used the word "acquisition" as a word of art which meant the acquiring of legal title, in distinction to the physical taking of possession. It would seem to be so used in the last sentence of Sec. 9. Sec. 10 speaks twice of "acquiring by condemnation" land and easements, which must mean acquisition by obtaining legal title. Sec. 11 refers to the lines of property of the owners whose property "will be affected by such acquisition" (that is, "the fee simple and easement area necessary for acquisition by the Commission"). Sec. 12 speaks of the Commission "acquiring land and property rights

under these Sections." In contrast, Sec. 14 requires immediate payment to (or into court for the use of) "the property owners whose property is to be *taken*" and then provides that upon such payment "* * * the Commission may thereupon *take possession* of the property * * * and said construction shall proceed without any delay caused by the property owner" (which would indicate that "acquire" or "acquisition" meant the obtention of legal title as opposed to physical possession) (emphasis supplied). Sec. 15 says "the value of the land and rights to be acquired shall be determined as of the date the plats or maps are recorded * * *," suggesting that acquisition of title is likely to be some time after recordation of the plats and the taking of possession. There is the seemingly synonymous use in Sec. 18 of "acquire title" and "time of acquisition," of which we have spoken earlier. Sec. 19 uses the phrase "acquire by condemnation," as does Sec. 10. Sec. 20, which applied to condemnation cases pending in court as of June 1, 1956, and provided for their certification to the new Property Review Boards, says: "The value of the land and rights to be acquired in this matter shall be determined as of the time the case is certified to the said board * * *," provided that if no determination has been reached and no condemnation suit filed within six months "* * * the value of the property shall no longer remain determined as of the time of certification but shall be determined as of the time of acquisition." Sec. 20 covered not only cases in which there had not yet been a taking but also cases under which there had already been a "quick take" under Sec. 9 (which took effect in 1942) and therefore time of acquisition, as used in Sec. 20, must have been intended to mean not time of taking, which would have been prior to time of certification to the board, but a time subsequent to the time of certification and therefore the time legal title was acquired.

Since the date of the trial was the date at which the property taken was to be valued, there was no error in striking the testimony of the State's expert as to 1961 values. It is apparent that counsel for the appellees who, of course, was familiar with the court's preliminary ruling that 1964 was to be time of valuation, and who had been furnished a copy of the witness' appraisal of 1964 value, did not sooner object to statements of

1961 values thinking they were preliminary to an updating to 1964 values, and that as soon as it became evident that the State intended to stop the witness after he finished with 1961 values, he moved to strike the testimony. We think his motion properly was granted.

The Commission complains to us that it was error to allow a qualified and experienced land planning consultant to testify as to the probability, if there had been no taking, of a part of the land taken being rezoned from residential to the same commercial use classification as another part and then not allowing the witness to say what the prospects were for a special exception use permit for off-street parking to service the already commercial part being granted as to the residential part, if there was no taking. The allowance of testimony by a qualified witness of probability of a zoning change which would affect value is proper, *State Roads Comm. v. Warriner*, 211 Md. 480, 483-485, and counsel for the Commission objected to the question as to the probability of the granting of off-street parking, and the objection was sustained. The Commission cannot now complain successfully of the sustaining below of its own objection.

The appellees moved to dismiss the appeal because the Commission paid into court the difference between the amount already there deposited and the amount of the jury's inquisition. Because of our view that the case must be affirmed, we see no good reason to set out our reasons for declining to dismiss.

*Judgment affirmed, with costs.*