HARDESTY ET AL. *v.* STATE ROADS COMMISSION OF THE STATE HIGHWAY ADMINISTRATION

[No. 241, September Term, 1974.]

*Decided September 8, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Ellen Luff,* with whom were *Harry C. Blumenthal, Jerome T. May* and *Blumenthal, Goldsborough & May* on the brief, for appellants.

*Richard T. Brice, IV,* with whom were *Francis B. Burch, Attorney General,* and *Nolan H. Rogers, Special Assistant Attorney General,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

On August 1, 1973, the State Roads Commission of the State Highway Administration (the Commission) filed a petition for land acquisition in the Circuit Court for Anne Arundel County pursuant to powers vested in it under § 40B of Article III of the Constitution of Maryland and Maryland Code (1969 Repl. Vol.) Art. 89B, §§ 10-20.[1] The petition stated: "This is not a formal condemnation petition and does not require an answer." The petition recited that it was necessary for the Commission to acquire the property and rights of W. Russell Hardesty et al. (Hardesty or condemnees) in 4.4 acres of land located on United States Routes 50 and 301, as shown on Commission Plat No. 36325 filed in the proceedings, for the following purpose:

> "[F]or Perpetual Easement for Special Purpose of Scenic Easement . . . Together with any and all right of ingress or egress across the lines which are designated 'Right of Way Line of Through Highway' except by means of such public road

---

1. Section 40B provides that if in the judgment of the Commission, the State needs a property for highway purposes, the General Assembly may by law provide that "such property may be taken immediately" upon payment to the owner or into court of its estimated value, provided the law also requires the payment of any subsequent additional award by a jury. Sections 10-20 of Art. 89B were adopted in implementation of the constitutional provision.

> connections as the Commission may construct or permit to be constructed; Together with the perpetual right to erect and maintain snow fences between October 1st and April 1st of each and every year, within one hundred feet of the land condemned."

In accordance with the provisions of § 13 of Art. 89B, the Commission deposited a check with the court for $23,600, which it estimated to be the fair value of the property rights to be acquired.

The parties being unable to agree on the fair value of the property, the Commission referred the case on January 18, 1974 to the County Board of Property Review, pursuant to the provisions of Art. 89B, § 20. Thereafter, on March 5, 1974, Hardesty filed a petition with the court seeking to withdraw the money deposited by the Commission (with interest), as authorized by Art. 89B, § 14. The court granted the petition upon the express condition that the condemnees "pay back to the said Commission the difference between the said sum and the final award, if said final award be less than the sum heretofore paid into Court. . . ." On June 26, 1974, the Commission, pursuant to Code (1974) Real Property Article, § 12-109 and Maryland Rule U26 filed an election to abandon condemnation proceedings, and asked the court to order that Hardesty return $23,826.17 to the State because "[n]o taking of the property sought to be condemned has yet occurred nor will it ever occur." Hardesty filed an answer to the Commission's election, urging that the Commission not be permitted to abandon condemnation; the condemnees asserted that "a taking has already occurred and plaintiff has possession of the property and has appropriated it to the public purposes of the plaintiff by virtue of the fact that the taking was for a scenic easement for Maryland Route 50, the benefit of which the public has already enjoyed."

A hearing was held before the court on August 29, 1974. It was stipulated between counsel that "there has been no physical appropriation, no physical taking of the property" and that "this scenic easement was a situation in which the

State did not intend to go down and knock down trees so you can see a lake, the scenic easement was for the purpose of leaving the trees there." No other evidence was adduced by either side. Counsel for the Commission argued that because there had been no physical appropriation, entry upon, or seizure of the property, no taking had occurred. He maintained that the rights of the parties with respect to the land "have not changed one iota" and that title to the property had not passed. Counsel for Hardesty argued that it was the State's purpose in seeking a perpetual scenic easement to maintain the property "all wooded and hilly"; that the State's purpose was "to keep the woods there, keep the hills as they are so it will be nice and beautiful"; that during the period that the Commission plat was on record, title to the Hardesty property was affected and the condemnees "couldn't have done anything, in contradiction to the scenic easement"; that by its condemnation proceeding, the Commission had "deprived the owner of the right to build a high rise or anything he wants"; that the basic purpose of the Commission in acquiring the scenic easement "was so that people can look at what is actually there. . . . They take possession . . . when they do this, and at that moment, when they file the plat and file the case, that deprives the owner of the right to make a contract." Hardesty maintained that physical possession is never involved in the taking of a scenic easement. The court concluded that no taking had occurred; it therefore permitted the Commission to abandon the condemnation proceedings and directed that Hardesty return the sum of $23, 476.17 to the Commission.[2] This appeal followed.

Under Real Property Article, § 12-109 (d) and Maryland Rule U26, a condemnation proceeding may not be abandoned after "taking has occurred." Section 12-102 of that Article provides that property is deemed to be taken in cases where the condemning authority is authorized to take the property before trial when "the required payment has been made to the defendant or into court, any required security has been given, and the plaintiff has taken possession of the property

---

2. The original amount deposited plus interest, less attorney's fees.

and actually and lawfully appropriated it to the public purposes of the plaintiff."

In initiating the condemnation proceedings in this case, the Commission acted under §§ 236-238 of Art. 89B (Subtitle "Highway Beautification"), which authorizes it to acquire, among other things, strips of land necessary for the restoration, preservation and enhancement of scenic beauty within and adjacent to federal-aid highways of this State. The concept of a scenic easement according to *Kamrowski v. State*, 31 Wis. 2d 256, 263, 142 N.W.2d 793, 796 (1966) "springs from the idea that there is enjoyment and recreation for the travelling public in viewing a relatively unspoiled natural landscape . . . ." One federal statute defines a scenic easement as "the right to control the use of land . . . for the purpose of protecting the scenic view . . . but such control shall not affect, without the owner's consent, any regular use exercised prior to the acquisition of the easement." 16 U.S.C.A. § 1286 (c) (1970). A scenic easement has otherwise been characterized as a negative easement or servitude precluding the owner of land from doing an act which, if no easement existed, he would be entitled to do:

> "Negative easements involve the payment to the landowner for a termination or extinguishment of a portion of his property rights. Scenic easements are an example: the landowner is paid by the state to terminate his right to erect structures or buildings or otherwise use his land so as to destroy the view from the highway. The state obtains no rights to enter upon the land, either for its departments or for the public at large. The state obtains only the right to enforce the negative easement through court action."
> Comment, *Progress and Problems in Wisconsin's Scenic and Conservation Easement Program,* 1965 Wis. L. Rev. 352, 360 (1965).

Hardesty argues on appeal that the occupancy or possession of a scenic easement is visual, not physical; that it is a negative easement prohibiting the landowner from

altering the scenic nature of his land. He contends that because the scenic easement condemned by the Commission was along a well-traveled highway and the condemnees refrained for 10 months from taking any action inconsistent with the scenic easement, the property was possessed by the public and appropriated to the purposes of the Commission. The Commission having made the required payment into court, and the condemnees having properly withdrawn the sum deposited, the condemnees maintain that a taking has occurred and that the easement cannot now be abandoned. The Commission argues that it has not taken Hardesty's property within the contemplation of § 12-102 of the Real Property Article because it has not "taken possession . . . [of it] and actually and lawfully appropriated it to the [Commission's] public purposes . . . ." The Commission says that physical entry must be shown before a taking will be decreed and that filing of the plat and posting of money with the court do not constitute a taking.

That there can be a taking of property giving rise to a vested right of compensation without formally divesting the owner of his title is well settled. *State Roads Comm'n v. Orleans*, 239 Md. 368, 211 A. 2d 715 (1965); *LaFontaine's Heirs v. LaFontaine's Heirs*, 205 Md. 311, 107 A. 2d 653 (1954). That a taking of property may occur without actual physical appropriation, entry or seizure is likewise clear. *Arnold v. Prince George's Co.*, 270 Md. 285, 294, 311 A. 2d 223, 227-28 (1973); *see also Leet v. Montgomery County*, 264 Md. 606, 616, 287 A. 2d 491, 497 (1972) and *Stevens v. City of Salisbury*, 240 Md. 556, 566, 214 A. 2d 775, 780 (1965).

As noted in Nichols, *Eminent Domain* § 6.1 (1) (3rd ed. 1970):

> "Constitutional rights rest on substance, not on form, and the liability to pay compensation for property taken cannot be evaded by leaving the title in the owner, while depriving him of the beneficial use of the property. . . . a legal restriction upon the use of land may constitute a taking, although the title is unaffected and the land is physically untouched, and the same is true when the owner's

enjoyment of the land is physically interfered with, although his legal rights remain unimpaired. However, just how severe the interference with the owner's enjoyment of his property must be to constitute a taking . . . is not a question which can be answered in such a way as to furnish a concise rule readily applicable to all cases likely to arise. . . ."

In stating that the weight of authority does not support the view that a physical appropriation is prerequisite to a "taking" of property in the constitutional sense, Nichols says at § 6.3:

"The modern, prevailing view is that any substantial interference with private property which destroys or lessens its value (or by which the owner's right to its use or enjoyment is in any substantial degree abridged or destroyed) is, in fact and in law, a 'taking' in the constitutional sense, to the extent of the damages suffered, even though the title and possession of the owner remains undisturbed."

We observed in *Stevens v. City of Salisbury, supra,* that not every injury to property involves a taking, that compensation for a taking may be exacted only for severe interferences which are tantamount to deprivations of use or enjoyment, and that whether there has been a taking is dependent on the facts of each case. *See also Mayor & City Council of Baltimore v. Himmelfarb,* 172 Md. 628, 192 A. 595 (1937); *Mayor & City Council of Baltimore v. Baltimore Marine Works, Inc.,* 152 Md. 367, 136 A. 829 (1927). Our predecessors held in *LaFontaine's Heirs,* 205 Md. at 320-21 that in determining the time of taking in immediate entry cases under § 40B of Article III of the Constitution of Maryland "the taking occurs when there is an actual appropriation of the land to highway purposes." It was there said:

"The Constitutional prohibition against the taking of private property means: ' * * * *taking* the

property from the owner, and *actually* applying it to the use of the public. It does not mean ·the preliminary measures necessary in such cases.' *Steuart v. Baltimore*, 7 Md. 500, 516." (Emphasis in *Steuart*)

To like effect, *see Concannon v. State Roads Comm.*, 231 Md. 87, 188 A. 2d 700 (1963).

In setting forth criteria governing determination of when property is deemed to have been taken by the condemning authority in "quick-take" cases, Section 12-102 of the Real Property Article makes no distinction between affirmative and negative easements. Nor does Hardesty suggest that because a negative easement is here involved, the taking occurred simultaneously with the filing of the so-called informal condemnation petition and accompanying plat; that question, therefore, is not now before us. We note, however, that in the usual case, under the provisions of § 12-102 the mere posting of money in court does not constitute a taking since the right to abandon a condemnation proceeding ceases only when "the authorized appropriation of land for public use actually has taken place." *LaFontaine's Heirs, supra,* at 319. For similar reasons, the filing of a finalized plat under § 14 of Art. 89B would not in itself ordinarily constitute a taking of property. It has been held that the recordation of the finalized plat freezes the value of the property as of the date of recordation; it is not a taking and does not determine when, or whether, possession of property is taken in a constitutional sense. *Pumphrey v. State Roads Comm.*, 260 Md. 633, 273 A. 2d 81 (1971); *State Roads Comm. v. Orleans, supra; LaFontaine's Heirs, supra.* For an extensive collection of cases citing the general rule that mere filing of a plat in anticipation of a public improvement does not constitute a taking, or damage to the property affected, *see* Annot., 37 A.L.R.3d 127 (1971).

It is the manifest purpose of the early entry statutes to permit the Commission to invoke an immediate right to possess or appropriate property for highway purposes. As we noted in *State Roads Commission v. Orleans, supra,* "in

almost every [such] case" the Legislature contemplated that "the physical taking would either be simultaneous with the recording [of the finalized plat] . . . or follow so shortly that there would be little likelihood of any rise in value between the date of recordation and the date of the taking." 239 Md. at 377. The petition filed by the Commission in the present case sought to condemn a scenic easement, together with the right of ingress or egress across the right-of-way lines along the 4.4 acres of the property fronting on the highway, and the right to erect snow fences within 100 feet of the land condemned. As previously indicated, the Commission's petition to abandon the condemnation proceeding alleged simply that no taking had occurred. The only evidence adduced at the hearing in support of the Commission's petition to abandon consisted of a stipulation that "there had been no physical appropriation, no physical taking of the property" and that the scenic easement to be acquired was "for the purpose of leaving the trees there." Considering the position taken by the Commission that physical entry upon the property was required before a taking could be mandated, the skimpy evidentiary record before us, the character of the property interest at stake, the immediate entry procedure employed by the Commission in undertaking to condemn the property, the fact that the public enjoyment of the scenic beauty of the property was immediate, the length of time involved before the Commission elected to abandon condemnation, and the legal restrictions placed upon the property during the pendency of the condemnation proceedings, we conclude that Hardesty was deprived of the full use and enjoyment of his property by the Commission's action to a degree sufficient to constitute a taking within the contemplation of § 12-102 of the Real Property Article.[3] *See Stevens v. City of Salisbury, supra.* The Commission cannot, therefore, totally abandon the condemnation proceedings it initiated on August 1, 1973.

---

**3.** The Commission suggests that no taking occurred because it did not exercise its right to erect snow fences within 100 feet of the property. There is no evidence in the record, one way or the other, showing whether the Commission exercised this right. Assuming it did not, however, we would not thereby be persuaded that no taking of the scenic easement occurred.

It may choose to await the award of the Board of Property Review, to which the case was referred on January 18, 1974, or, after complying with the provisions of Maryland Rule U27 f, file a formal condemnation petition in compliance with Rule U6.[4] Although the Commission may not be precluded in the circumstances of this case from undertaking to amend the extent of its taking of Hardesty's property rights (*see* Rule U26) to a scenic easement of less than perpetual duration, it will in any event be required to pay compensation for the fair value of those property rights heretofore actually taken for public purposes.

> *Judgment reversed; case remanded for further proceedings; costs to be paid by the appellee.*

---

4. Rule U27 f authorizes the Commission to compel the Board to relinquish jurisdiction over a case referred to it where, as here, the Board did not hear the matter within three months after the filing of the notice of referral. If the Commission takes such action, it is obliged under Rule U27 g 2, within thirty days, to "institute a proceeding for condemnation by filing in court a petition for condemnation." Rule U6 outlines the essential averments to be made in a formal condemnation petition, and Rule U9 sets forth requirements pertaining to the form and content of the condemnee's Answer.