584 A.2d 1331

**STATE ROADS COMMISSION OF THE STATE HIGHWAY ADMINISTRATION**

v.

**G.L. CORNELL COMPANY SAVINGS AND PROFIT SHARING TRUST.**

No. 502, Sept. Term, 1990.

Court of Special Appeals of Maryland.

Feb. 1, 1991.

766

Omar Melehy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Edward S. Harris, Asst. Atty. Gen., Baltimore, and Frank W. Wilson, Poolesville, on the brief), for appellant.

David MacDonald (William J. Rowan, III and Rowan & Quirk, on the brief), Rockville, for appellee.

Argued before WILNER, C.J., and BISHOP and ROBERT M. BELL, JJ.

WILNER, Chief Judge.

The State Roads Commission, a Constitutional unit within the State Highway Administration, appeals a judgment of the Circuit Court for Montgomery County entered in a "quick-take" condemnation case. Its sole complaint concerns the award of pre-judgment interest. Although much of the basis for appellant's complaint was of its own making, we think that there is merit in it. We therefore shall remand the case for an appropriate amendment to the judgment.

## I. CONSTITUTIONAL AND STATUTORY BACKGROUND

The issue before us arises from an interplay between appellant's Constitutional obligation to pay just compensation when it condemns private property and the statutory framework implementing its separate Constitutionally-derived authority to engage in "quick-take" condemnation. It will be helpful to a consideration of that issue to begin by examining the Constitutional provisions and the relevant statutes and Rules implementing them.

As the Court of Appeals pointed out in *King v. State Roads Com'n of St. Hwy. Admin.*, 298 Md. 80, 467 A.2d 1032 (1983), in conventional eminent domain cases, the State commences the condemnation process by filing a petition in court to condemn the property. Unless the parties agree on the amount of damages to be paid for the taking, a trial

ensues and the court, generally through a jury, determines the fair value of the property. That amount is entered as a judgment. The State has no right to possess the property and does not acquire title to it until it pays the full amount of the judgment, plus costs. In a "quick-take" case, the State is entitled to take, and usually does take, possession of the property before the fair value of the property is established. *See State Roads Comm. v. Orleans*, 239 Md. 368, 377, 211 A.2d 715 (1965). At the commencement of the proceeding—at or before the time it takes possession—it pays to the owner, or into court for the owner's benefit, what it estimates the fair value of the property to be. If the parties are unable to agree on fair value, that issue is tried and resolved by a jury, and, if the fair value ultimately determined is greater than what the State has previously paid, it must make up the difference, together with interest on that difference.

The State Roads Commission was not authorized to engage in "quick-take" condemnation until 1942. Art. III, § 40 of the Maryland Constitution provided then, as it does now, that the General Assembly shall enact no law authorizing private property to be taken for public use "without just compensation, as agreed upon between the parties, or awarded by a Jury, first being paid or tendered to the party entitled to such compensation." The only exception to that requirement was a special provision in § 40A of art. III, adopted in 1912, authorizing the General Assembly to permit the State or Baltimore City to take land in the City for public use upon payment of an amount determined by court-appointed appraisers and "securing the payment of any further sum that may be awarded by a jury...."

The Commission's authority to use this variation stems from 1941 Md. Laws, chs. 606 and 607. The latter enactment proposed a new § 40B to art. III, which was ratified by the voters in November, 1942. It states:

"The General Assembly shall enact no law authorizing private property to be taken for public use without just compensation, to be agreed upon between the parties or

awarded by a jury, first being paid or tendered to the party entitled to such compensation, except that where such property in the judgment of the State Roads Commission is needed by the State for highway purposes, the General Assembly may provide that such property may be taken immediately upon payment therefor to the owner or owners thereof by said State Roads Commission, or into Court, such amount as said State Roads Commission shall estimate to be the fair value of said property, provided such legislation also requires the payment of any further sum that may subsequently be awarded by a jury."

This Constitutional provision did not grant any "quick-take" authority to the Commission itself. It simply empowered the General Assembly to enact legislation providing such authority. That was the function of ch. 606. Contingent on the ratification of ch. 607, it authorized the Commission to take possession of property and proceed with highway construction prior to the ultimate determination and payment of fair value, provided that (1) it first pay to the owner, or into court, the amount it estimates to be the fair value, and (2) if the parties were unable to agree on compensation, it institute condemnation proceedings, in accordance with the general statutes governing such proceedings, within 60 days after completion of construction. Implicit in that latter proviso was that the Commission promptly pay the amount ultimately determined to be due. *See* 1939 Md.Code, art. 33A, §§ 13, 17.

The provisions first enacted by ch. 606 have been amended, expanded, and recodified several times in the ensuing years. They now appear as Parts III (§§ 8–318 through 8–331) and IV (§§ 8–334 through 8–339) of title 8, subtitle 3 of Md. Transp. Code Ann. These two parts provide alternative methods by which the Commission may exercise its "quick-take" authority. Part III sets forth a non-judicial process for resolving disputes over fair value that the Commission, at its option, may invoke before commencing formal judicial proceedings. Part IV allows the Commis-

sion to dispense with that process and proceed directly to court. *See King v. State Roads Comm'n.*, 294 Md. 236, 449 A.2d 390 (1982). In this case, the Commission proceeded pursuant to Part III, and so we shall deal only with the relevant statutes in that Part, as supplemented by some of the Md. Rules.

Sections 8–320 and 8–321 seek to assure that the Commission completes all the necessary groundwork before proceeding to exercise quick-take authority. Section 8–320 requires that "[b]efore any property is condemned under this part," the State Highway Administration must "[c]omplete appropriate engineering and other studies" and prepare a construction plan showing the location of the proposed highway, the length of the construction, and the width of the right-of-way necessary for the construction. It must then prepare plats showing, among other things, "[t]he fee simple and easement area to be acquired" and the property lines of the owners whose property will be affected by the acquisition. Finally, after the plats are prepared, the Administration must make the necessary studies and evaluations to determine the fair value of the property to be acquired, prepare an estimate of the fair value, and provide for payment of that amount as required by § 8–323. Section 8–321 requires these plats and estimates to be submitted for approval by the Commission. After such approval, the plats must be filed with the appropriate circuit court clerk for recording.

Section 8–323 continues the chronological sequence. It states that after the plats are filed for record, the Commission "immediately" shall file a petition for condemnation, stating, among other things, the Commission's approved estimate of fair value, and pay to the property owner or into court the estimated fair value specified in the petition. If the money is paid into court, the property owner is entitled to withdraw it without prejudice to any of his rights if he agrees to repay the Commission any excess of what he withdraws over the final award. Subsection (c) makes clear that a payment under subsection (a) does not limit in any

way the amount of the final award that may be allowed in the subsequent condemnation proceedings. Section 8–324 provides that, upon the filing of the petition and the payment of money pursuant to § 8–323, the Administration may take immediate possession of the property and proceed with construction. That, in effect, is the "quick-take" provision.

Sections 8–325 through 8–329 set forth a procedure for resolving disputes over the amount of compensation to be paid. Section 8–325 requires the Commission, after payment under § 8–323, to seek to acquire the property "by amicable negotiation." Subsection (b) provides that "[f]or purposes of these negotiations, the Commission shall determine the value of the property to be acquired *as of the date the payment is made* to the property owner or into court *under § 8–323....*" (Emphasis added.)

Sections 8–326 through 8–329 provide for a form of non-binding arbitration in the event amicable negotiation proves unsuccessful. Section 8–327 establishes a board of property review in each county of the State. With exceptions not relevant here, § 8–326 requires the Commission, upon the failure of negotiations, to certify the case to the appropriate board for a determination of fair value. Md. Rule U27, which implements the statute, allows *any party* to have a case certified to the board "not later than six months after the plats ... have been recorded." Section 8–323 empowers the board to hear promptly all cases certified to it and to determine the total amount of the award to be paid by the Commission. Md. Rule U27 d., indeed, requires the board to hear the case within three months after the referral, and if the board fails in that duty or fails to file an award within 30 days after its hearing, any party, by complying with section f. of Rule U27, can divest the board of further jurisdiction and have the case remanded to the court.

Section 8–328(c), consistently with § 8–325, provides that the board shall determine the fair value of the property to be acquired as of the date the payment is made under

§ 8–323. Section 8–329 makes the award of the board non-binding. It provides that, if any party is dissatisfied with the board's findings or award, "the case may be appealed to the court," which "shall hear and determine the case de novo, as provided by law and the Maryland Rules." In fact, the court proceeding is not in the nature of an "appeal" but an original action to condemn the property. *Volz v. State Road Commission,* 221 Md. 209, 156 A.2d 671 (1959). Supplementing § 8–329 is Md. Rule U27 g., which provides that any party who is dissatisfied with the board's award may, within 30 days after filing of the award, file a notice of dissatisfaction with the clerk. Within 30 days after the filing of such a notice, the condemning authority must file a proceeding for condemnation "by filing in court a petition for condemnation."[1]

The heart of the dispute before us arises from §§ 8–330 and 8–331. Section 8–330 provides that:

"If, within 1 year after payment is made under § 8–323 of this subtitle, the Commission fails to ascertain the entire amount to be paid for the property and acquire title to it by deed or condemnation or, within that same 1–year period, fails to file timely a petition for condemnation as required by the Maryland Rules, then the fair value of

---

1. There is a facial discrepancy between Rule U27 g. and Code § 8–323(a)(1). The Code section requires the Commission to file a "petition for condemnation" immediately after the plats are filed for record. Under §§ 8–325 and 8–326, referral to the board occurs *after* that petition is filed. Rule U27 g., on the other hand, suggests that the petition is not filed until after the board has rendered its award or the case has been removed from its jurisdiction. It appears that the Commission has resolved this apparent inconsistency by referring to the first petition—that filed pursuant to Code § 8–323—as an "informal" petition and regarding as the "formal" petition that actually commences the litigation that which is filed pursuant to the Rule. The Court of Appeals has, at least tacitly, acquiesced in that approach. *See Hardesty v. State Roads Comm'n,* 276 Md. 25, 27, 343 A.2d 884 (1975), noting without comment the Commission's assertion that the first petition was "not a formal condemnation petition." *See also State Roads Comm'n v. Pumphrey,* 260 Md. 633, 635, 273 A.2d 81 (1971), referring to the second petition as "a formal condemnation petition."

the property shall be *the greater of the values deter-mined as of:*

    (1) The date the title to the property is acquired; and

    (2) The date the payment was made under § 8–323 of this subtitle."

(Emphasis added.)

Section 8–331 states:

"At the conclusion of all proceedings, the Commission shall pay to the property owner:

    (1) Any excess of the final award over the amount paid under § 8–323 of this subtitle; and

    (2) Interest on the excess from the date of payment under § 8–323 of this subtitle at the rate of 6 percent a year."

Section 8–331 parallels a similar provision in title 12 of the Real Property article, which deals generally with eminent domain. Section 12–106(c) of that article provides:

"In proceeding under Article III of the Constitution of the State ... the plaintiff shall pay interest at the rate of 6 percent per annum on any difference between the amount of money initially paid into court for the use of the defendant and the jury award as stated in the inquisition, from the date the money was paid into court to the date of the inquisition or final judgment, whichever date is later."

Where, as here, § 8–330 comes into play, several different dates may become relevant in determining the full amount to which the property owner is entitled—the date payment is made under § 8–323, the date the property is taken (if that is different from the date of payment under § 8–323), the date the "final award" is paid, and the date "the title to the property is acquired."

## II.  FACTUAL BACKGROUND

On October 9, 1985, the State Roads Commission filed in the Circuit Court for Montgomery County an "informal" petition to condemn, by "quick-take," certain property

owned by appellee. In the petition, the Commission asserted its belief that the fair value of the property was $1,275,-800, and it therefore deposited that amount with the clerk of the court. On December 12, 1985, the Commission filed a notice of referral of the case to the Montgomery County property review board, alleging that the parties had been unable to agree on the fair value of the property. A hearing was set before the board on April 23, 1986, but a week before that scheduled hearing, the Commission informed the board that the plats and construction plans were in need of revision and so it asked for a postponement.

Nothing more happened until October 10, 1986, when the Commission filed a formal condemnation petition in the circuit court. Four days later, it informed the board that, "[d]ue to pending Plat Revisions," it was "removing this case from your jurisdiction and will proceed directly to trial." The Commission did not actually take possession of appellee's property and begin construction until June 15, 1987. On February 29, 1988, the Commission informed appellee that there were to be no changes to the plats after all and that it was ready to proceed to trial.

The filing of the formal petition came, as the above-noted dates indicate, a year and a day after the payment of the $1,275,800 into court, and so the question arose as to what the appropriate valuation date would be. In an order entered May 19, 1988, the court, through Judge Weinstein, rejected appellee's position that the valuation date was to be determined under § 8–330(1), i.e., the date title to the property is acquired, and ruled instead that the valuation was to be determined under Real Property article, § 12–103, namely, the date of taking, June 15, 1987.

The case first came to trial in July, 1988, before Judge Messitte. Over appellee's objection, Judge Messitte refused to depart from Judge Weinstein's conclusion as to the appropriate valuation date, and so it appears that the jury was instructed to value the property as of June, 1987 rather than the date of trial (which, as a practical matter, would most closely approximate the date of title acquisition). On

July 21, the jury returned an inquisition verdict establishing a fair value of $2,400,000, whereupon, on August 12, 1988, the Commission deposited with the court an additional $1,320,840, making the total deposit $2,596,640.

Appellee was dissatisfied with that result, largely because of what it regarded as an erroneous valuation date, and it promptly filed a motion for new trial which, in December, 1988, the court granted. Prior to retrial, the parties entered into three basic stipulations. First, they agreed that the valuation date was to be November 27, 1989. Second, through both a stipulation and a Consent Inquisition, they agreed that the full extent of damages sustained by appellee from the taking, other than pre-judgment interest, was $3,300,000 and that, upon payment of that sum, title to the property would vest in the Commission. And finally, they agreed that their dispute over the amount of pre-judgment interest to be awarded would be separately heard and determined by the court, sitting without a jury.

The dispute over pre-judgment interest centered on three issues: (1) whether, because the agreed fair value was calculated as of the time of *trial,* and was greater in amount than the fair value at the time of taking, *any* pre-judgment interest was due, (2) if such interest *was* due, whether it was limited to the 6% rate provided for in § 8–331 and Real Prop. art., § 12–106, and (3) if not, what the rate should be. The Commission's view as to the first issue was, and remains, that where the value of the property has appreciated since the taking and the owner receives the benefit of that appreciation through a current valuation date, pre-judgment interest is neither Constitutionally nor statutorily required. The court rejected that argument and proceeded to hear evidence as to the appropriate rate.

In an order entered January 30, 1990, the court found that pre-judgment interest was Constitutionally due and that the appropriate rate of pre-judgment interest was 9% per annum. Applying that rate to the difference between the $3,300,000 agreed fair value and the amounts previously

deposited by the Commission, it awarded pre-judgment interest of $611,848. The Commission's appeal is from that part of the judgment. It raises essentially the first two issues just noted—whether any pre-judgment interest is due and, if so, whether it is limited to the statutory rate.

## III.  DISCUSSION

As we have indicated, the issues raised by the Commission involve an interplay between the Constitutional requirement that "just compensation" be paid for the taking of private property and the statutory implementation of the Legislature's power to authorize "quick-take" condemnation by the Commission. Although the statutory scheme is obviously subject to the supervening Constitutional mandate of just compensation and, to some extent, serves to implement that mandate, it also serves other purposes and has to be viewed in that light. It would be helpful, we think, to look at the two separately before analyzing how they mesh together.

### A.  *Just Compensation*

The requirement of just compensation emanates not only from art. III, §§ 40 and 40B of the Maryland Constitution but also from the Fifth and Fourteenth Amendments to the United States Constitution. As pointed out in *King v. State Roads Com'n of St. Hwy. Admin., supra,* 298 Md. at 84, 467 A.2d 1032, " 'just compensation' for the taking of property means the full monetary equivalent of the property taken; the property owner is to be put in the same position monetarily as he would have occupied if his property had not been taken."

From the Constitutional perspective, it has long been the rule that "[w]ith respect to the property taken the award must be based upon its actual market value at the time of the condemnation." *Brack v. M. & C.C. of Balto.,* 125 Md. 378, 381, 93 A. 994 (1915) and cases cited there. *See also Andrews v. City of Greenbelt,* 293 Md. 69, 76, 441 A.2d 1064 (1982). Normally, that means the time of *taking,*

when the owner is dispossessed and the condemning authority assumes possession and begins to exercise control over the property. *See, in general,* 3 *Nichols on Eminent Domain* § 8.5[1]; *see also Reindollar v. Kaiser,* 195 Md. 314, 319, 73 A.2d 493 (1950). In a "quick-take" case, "the taking occurs when there is an actual appropriation of the land to highway purposes." *LaFontaine's Heirs v. LaFontaine's Heirs,* 205 Md. 311, 320, 107 A.2d 653 (1954); *Concannon v. State Roads Comm.,* 230 Md. 118, 123, 186 A.2d 220 (1962); *cf. Hardesty v. State Roads Comm'n., supra,* 276 Md. 25, 31, 343 A.2d 884 (1975).

The role of pre-judgment interest in this setting was discussed in *King, supra,* 298 Md. 80, 467 A.2d 1032. In a conventional condemnation, as we indicated, the taking does not occur until after the fair value has been agreed upon or judicially determined, and so, where subject to judicial resolution, the valuation date is essentially the date of trial. Because, in such a case, the owner receives the full measure of just compensation contemporaneously with the taking, he is not Constitutionally entitled to any pre-judgment interest. *Id.* at 85, 467 A.2d 1032.

In a "quick-take" case, however, where the owner does not receive the full fair value of his property until some time after the taking, the payment of pre-judgment interest on the difference between what the owner has received and what he is ultimately found to be entitled to "is a part of the just compensation required by the constitution to be paid for the taking; it is designed to pay the condemnee the 'time value' of the money he should have received for his property on the day it was taken." *Id.* at 86, 467 A.2d 1032. Applying that principle, the Court observed at 91, 467 A.2d 1032:

"If the property owner had been paid on the day of the taking when he was entitled to receive the full value of the property taken, he presumably would have invested the funds in a prudent manner. [citation omitted] Thus, when payment is delayed, the jury must fix interest on any deficiency award at the rate a reasonably prudent

person investing funds so as to produce a reasonable return while maintaining safety of principal would receive."

Where fair value is, in fact, determined as of the date of taking and the difference between the ultimate award and the amount previously deposited results simply from an underestimate by the State, the principles articulated and applied in *King* compel an award of pre-judgment interest at a market rate. But where fair value is determined as of some later time and the evidence establishes that the fair value as of then is greater than it was at the time of taking, those same principles may dictate a different result. In that circumstance, depending on the extent of the increase in value and the amount of investment income the owner could reasonably have earned had he received, contemporaneously with the taking, the full fair value of the property as of that time, the owner may have received the full measure of just compensation without recourse to pre-judgment interest.

The validity of that proposition stems from the more basic principle just discussed, that the requirement of just compensation entitles the owner only to the fair value of the property taken as of the time it is taken, when it is taken. Thus, if, in an ordinary "quick-take" proceeding the Commission were to pay to the owner contemporaneously with the taking, an amount equal to or greater than the amount the jury later finds to be the fair value, there would be no Constitutional justification for any pre-judgment interest. In the words of *King,* the owner would then be "in the same [or better] position monetarily as he would have occupied if his property had not been taken." Nor would pre-judgment interest be Constitutionally required where the fair value, established as of a later time, is greater than the sum of the fair value as of the time of taking and the investment income the owner could reasonably have earned had he received that value contemporaneously with the taking. There, too, the owner would be fully compensated for his loss by payment of the established fair value. If, on

the other hand, the fair value, established as of a later time, exceeds the fair value as of the time of taking but does not exceed the sum of that value and the investment income that could reasonably have been earned from it, pre-judgment interest would be required, but only in an amount necessary to compensate the owner for the lost income. The basis for calculating that interest would be the fair value at the time of *taking*, however, not the fair value ultimately determined.

■ The record before us may suffice to permit a determination of any pre-judgment interest that might be required under this analysis. It does establish what was paid to appellee and when those sums were paid; a jury did, in fact, determine the fair value of the property as of the date of taking to be $2,400,000; the court later found the appropriate market rate to be 9% per annum. Whatever such calculations may show, however, it is clear that the approach taken by the circuit court was wrong. It used the fair value as of the time of *trial* ($3,300,000) rather than as of the time of *taking* ($2,400,000) as the base for calculating the interest, and, under a "just compensation" analysis, that was inappropriate. The award of $611,848 in pre-judgment interest was not Constitutionally required.

### B. *Statutory Entitlement*

■ Section 8–331 seems very clear on its face. It says that, at the conclusion of all proceedings, "the Commission shall pay to the property owner" the excess over what was paid under § 8–323 and interest on that excess at the rate of 6% a year. There are no qualifications or conditions to this directive. The statute does not say that such interest is to be paid unless the alternate valuation date under § 8–330(1) is used. Yet that is how the Commission urges us to construe the statute. To add pre-judgment interest where the owner has already received the benefit of the later valuation date would produce a windfall for the owner that the Legislature could never have intended, it tells us without benefit of any supporting evidence.

We agree that, under certain circumstances, perhaps including those here, the payment of interest under § 8–331 where the alternate valuation date has been used can produce an extra benefit for the owner. Whether the Legislature did not envision or intend such a result is not so clear as the Commission seems to think.

It is axiomatic that "[t]he cardinal rule of statutory construction is to ascertain and effectuate legislative intent." *Harford County v. University,* 318 Md. 525, 529, 569 A.2d 649 (1990). The primary source for divining such intent is the language of the statute itself, giving the words used by the Legislature their plain, ordinary, natural meaning. But, as further explicated in *Harford County,*

"[T]hat plain-meaning rule is not absolute. One equally well settled principle is that a statute is to be construed reasonably with reference to the purpose, aim or policy of the legislature reflected in the statute.... Additionally, a statute must be construed in context, because the meaning of the 'plainest language may be governed by the context in which it appears.' ... Among those contexts may be the statutory scheme in which the language appears.... In any event, 'results that are unreasonable, illogical or inconsistent with common sense should be avoided.' "

*Id.* at 529–30, 569 A.2d 649 (quoting *NCR Corp. v. Comptroller,* 313 Md. 118, 125, 544 A.2d 764 (1988); *Potter v. Bethesda,* 309 Md. 347, 353, 524 A.2d 61 (1987)).

The plain language of § 8–331, as we have indicated, lends no support whatever to the Commission's interpretation. Nor, as we shall see, does its history or context.

The provisions now embodied in §§ 8–330 and 8–331 were first enacted by 1956 Md. Laws, ch. 59. At that time, the only statute dealing specifically with "quick-take" condemnation by the Commission was 1951 Md.Code, art. 89B, § 9. Under that statute, as construed in *LaFontaine's Heirs v. LaFontaine's Heirs, supra,* 205 Md. 311, 107 A.2d 653, the property was to be valued as of the time of taking. The

statute required the Commission to pay or deposit its estimate of fair value prior to entering upon possession as well as "any further sum that may subsequently be finally awarded in a subsequent condemnation proceedings." There was no provision for pre-judgment interest on that "further sum."

The 1956 Act left § 9 intact. In new §§ 9A–9K, it created the alternative procedure now embodied in Part III (§§ 8–318—8–331). Section 9E encompassed most of what is now included in §§ 8–321 (approval and recording of plats), 8–322 (retaining plats as Commission records), 8–323 (payment of estimate fair value and filing petition), 8–324 (right to immediate possession), and 8–331 (payment of final award). The last paragraph of that section, referring initially to the sum paid by the Commission upon the taking, stated, in relevant part:

> "[S]uch payment to the property owner or into Court, however, shall in no wise limit the amount to be allowed *under subsequent condemnation proceedings hereinafter provided,* and the Commission shall make payment to the owner or owners of said land and property rights, from any funds in its possession or under its control, *any further sum that may subsequently be finally awarded* in subsequent condemnation proceedings, including interest at the rate of six percent (6%) per annum upon such further sum."

(Emphasis added.)

Sections 9F–9H dealt with the duty to negotiate, the property review boards, and proceedings before those boards. The "subsequent condemnation proceedings hereinafter provided" were dealt with in § 9I, which encompassed what is now included in §§ 8–329 and 8–330. The relevant provision there was as follows:

> *"If the Commission shall have failed to acquire title to the property and ascertained the amount to be paid for same within one year from the date the plats or maps are recorded, as aforesaid, or have failed to file a condemnation suit in the proper Court, as aforesaid,*

*then, and in such case, the value of the property shall no longer* ~~remain fixed but shall be determined as of the time of acquisition.~~ *BE DETERMINED AS OF THE DATE THE PLATS OR MAPS WERE RECORDED BUT SHALL BE DETERMINED AS OF THE TIME OF ACQUISITION UNLESS THE VALUE BE LESS AT THE TIME OF ACQUISITION AND THEN, IN SUCH CASES, THE VALUE SHALL BE DETERMINED AS OF THE RECORDATION DATE."*[2]

We draw two inferences from this enactment. First, it is evident from the amendments made to § 9I that the General Assembly paid close attention to that provision. Second, it seems clear that the Legislature recognized that there could be an interplay between the two sections. Under § 9E, the interest was to be paid as part of "any further sum that may subsequently be finally awarded" in "subsequent condemnation proceedings hereinafter provided." The proceeding "hereinafter provided" expressly recognized the prospect of the final award being based on a valuation made as of the time of title acquisition, i.e., trial. Especially where both of these provisions were enacted together, in the same bill and as part of a comprehensive legislative scheme, this connective language has to be given some meaning.

Finally, despite the prospect of a windfall, we do not conceive that a construction consistent with the plain meaning of the language would produce a result that is necessarily unreasonable, illogical, or inconsistent with common sense. One purpose of the provision for pre-judgment interest may well have been to implement the Constitutional requirement of just compensation, as perceived at the time. Without the benefit of the Court's much later analysis in *King, supra,* 298 Md. 80, 467 A.2d 1032, a six percent rate would have been logical for the General Assembly to prescribe. It was the "legal" rate of interest provided for in

---

**2.** The italicized language shows the statute as initially proposed. The capitalized language and the strike-outs depict amendments made during the legislative process.

Maryland Constitution, art. III, § 57 and was considerably higher than the actual interest rates prevailing at the time.[3]

Apart from that, one of the clear hallmarks of this legislative scheme was a requirement that the Commission act expeditiously throughout the process. The Commission is directed to have its engineering and economic studies and plans complete before it commences the proceeding; specific time limits are placed on each stage of the action and upon the process as a whole. Sections 8–330 and 8–331 represent, in effect, sanctions in the event the Commission fails in its duty to act expeditiously, as it plainly did in this case. Rather than being penal in nature, as they could have been, those sanctions take the form of requiring additional payment to the property owner subjected to the Commission's lack of diligence, of requiring the Commission to pay him more than he would otherwise be entitled to receive. Sanctions of that nature are common and legitimate.

If the General Assembly, upon further reflection, decides that interest under § 8–331 should not be paid under this circumstance, it is, of course, free to amend that section to so provide. Under the current state of the law, however, we conclude that the statutory interest is payable.[4]

## IV. CONCLUSION

In Part III–A of this Opinion, we concluded that, in a "quick-take" condemnation, an owner is Constitutionally

---

**3.** According to the Federal Reserve Board, the Bank rate on short-term loans in September, 1956 was 4.35%. See Federal Reserve Bulletin, Sept. 1956, p. 1337.

**4.** We are aware that pre-judgment interest under § 8–331 has not been routinely awarded when the alternate valuation date is used. *See,* for example, *State Roads Comm'n v. Pumphrey, supra,* 260 Md. 633, 273 A.2d 81 and Record Extract filed in that case (Sept. Term, 1970, No. 245), E.2; *State Roads Comm. v. Orleans, supra,* 239 Md. 368, 211 A.2d 715; briefs and record extract filed in *State Roads Commission v. 370 Limited Partnership,* Md. Ct. of Appeals, Sept. Term, 1990, No. 28. Other than in this case and in *370 Limited Partnership,* currently pending in the Court of Appeals, it does not appear that the issue of the owner's entitlement to such interest has been raised and litigated.

entitled, as just compensation, to (1) the fair value of the property taken, calculated as of the date it is taken, plus (2) pre-judgment interest at market rate on the difference between that value and any amounts the owner has previously received. That is a minimum, not a maximum entitlement. The Legislature cannot *require* an owner to accept less, although it is free, by virtue of art. III, § 40B, to provide for more.

Through the enactment of § 8–330, it has, in fact, allowed an owner to receive more than the Constitutionally required just compensation where the Commission fails to file a formal petition or acquire title within a year after making initial payment under § 8–323. In such a case, absent an agreement between the parties stipulating that one of the two alternative values is the higher, the jury would normally determine both and then base its award on the higher. The six percent interest would then be applied pursuant to § 8–331 as part of the award.

There may, of course, be situations in which the amount calculated under the statute would be less than that calculated under a "just compensation" analysis, in which event the owner may insist upon the latter on the theory that the statute, as applied in that case, would be unconstitutional. But that is not the situation now before us. Appellee has rejected a "just compensation" analysis in favor of the statute, demanding that the award be based on the later valuation date. Having chosen that course, it must be content with the benefits (and limitations) afforded by the statute. Accordingly, we hold that where, as here, the owner insists upon the alternate valuation date under § 8–330, he is entitled to such pre-judgment interest as may be afforded under § 8–331—i.e., at the 6% rate—and not to anything more. We are aware of the language in *King v. State Roads Com'n of St. Hwy. Admin.*, *supra*, 298 Md. at 91, 467 A.2d 1032, that the 6% rate is "the minimum rate of interest to which a property owner is entitled in a quick-take case." That language, however, was used in the context of an award based on a valuation fixed as of the

date of taking, and is therefore not apposite to the case before us.

Appellee is entitled to pre-judgment interest for the periods calculated by the circuit court, but at the 6% rate. We shall therefore remand the case for an appropriate recalculation of that interest and a corresponding amendment to the judgment.

JUDGMENT FOR PRE–JUDGMENT INTEREST VACATED; CASE REMANDED TO CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.