## BELWORTH, INC. *v*. MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 140, September Term, 1969.]

*Decided January 7, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SMITH and DIGGES, JJ.

*Edwin T. Steffy, Jr.* for appellant.

*Roger C. Duncan, Assistant City Solicitor,* with whom were *George L. Russell, Jr., City Solicitor,* and *Clayton A. Dietrich, Chief Assistant City Solicitor,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This appeal is from a judgment entered in condemnation proceedings instituted by the Mayor and City Council of Baltimore against commercial land owned by appellant Belworth, Inc. and Shell Oil Company (Shell), mortgagee.[1] The subject property is a tract of land located at Kirk Avenue and 22nd Street in Baltimore City. It is improved by a single story building, with a basement that formerly was used for offices, cafeteria and storage.

The City seeks to acquire the property for use as a neighborhood recreation center. It presented two appraisers as expert witnesses. John F. Conroy testified that in his opinion the highest and best use of the building was for commercial purposes with a small percentage of office area. He stated his belief the fair market value of the property to be $42,500. William K. Ferguson stated that in his opinion the property had a fair market value of $45,000. Appellant also presented two expert appraisers. Both agreed that the highest and best use was for industrial or commercial use requiring large office spaces. Based on this use, C. Gordon Gilbert found the fair market value to be $110,000, and B. H. Waterbury, Jr. estimated $102,500.

The building in question was formerly owned by the Shell Oil Corporation (now Shell Oil Company) and used by it as offices until 1961. At that time it moved from the building and sold the property to the appellant but retains a mortgage on it. Since the date of the sale the building has stood vacant. It has been subjected to extensive deterioration caused by vandalism and exposure to the weather. All parties agree that substantial sums would have to be expended for repairs before the building would be tenantable. The jury by its inquisition awarded the appellant and Shell the sum of $50,000 for the property.

Appellant Belworth, Inc. appeals from the judgment

---

1. Shell Oil Company did not appeal.

entered on the inquisition and claims error causing substantial injustice to it by the trial judge in two instances. The first instance is that one of the appellee's expert witnesses, John F. Conroy, was permitted to state that "Shell Oil Company" told him in 1961 that the reason the company moved was "because the neighborhood was getting too rough, and causing them problems with their female help."

Appellant claims error in the admission of this statement because it is hearsay evidence and has the prejudicial effect of undermining appellant's experts' testimony that the highest and best use of the property would be to devote it largely to office use, employing many clerical workers. It argues that 1961 is too remote in time to have any relevance to the highest and best use as of the time of taking in 1969.

Appellant indicates in its brief it is properly mindful of this Court's reluctance to set aside condemnation awards for errors in the admission of evidence unless these errors are found to have caused "substantial injustice." *State Roads Comm. v. Adams,* 238 Md. 371, 209 A. 2d 247 (1965); *Hance v. State Roads Comm.,* 221 Md. 164, 156 A. 2d 644 (1959). But assuming without deciding that admission of Conroy's statement was error,[2] we are unable to say it caused substantial injustice to the appellant. Conroy testified to a report of conditions in 1961. The date of taking was March 7, 1969. On that date the jury viewed the property, saw for itself the vandalized condition of the building and was able to make its own independent observation of the character of the neighborhood. In fact appellant's own expert witness, Gilbert, stated ". . . due to the trend of industry toward

---

2. There is considerable authority to support the proposition that hearsay evidence may be utilized by a real estate expert in reaching his conclusion as to the highest use for the property in arriving at his estimate of its value, and that such testimony may be properly received in evidence. *State Roads Com. of Md. v. Novosel,* 203 Md. 619, 626, 102 A. 2d 563 (1954); 5 Nichols, *Eminent Domain,* (rev. 3d ed.) Sec. 18.42 [1] 253-56.

suburban industrial parks, and the declining character of the inhabitants of the neighborhood, this area has been declining in value in recent years." Thus all parties seem to now concede that the neighborhood at the time of the taking was a depressed area. The statement made in 1961 was in the nature of a prophecy, which, unfortunately for the appellant, has come true. We think appellant is similarly situated to the condemnee in *Bergeman v. State Roads Comm.*, 218 Md. 137, 146 A. 2d 48 (1958), where an expert witness was permitted to testify to a comparable sale with knowledge of the sale price being gained solely from tax stamps on a deed. We held there was no reversible error in that case because the purchaser of the property later took the stand and admitted he paid the price testified to by the witness in question. "The declining character of the inhabitants of the neighborhood" was the stated reason for Shell's vacating the premises. This same condition was shown by the appellant's witness to have continued even at an accelerated pace up until the time of the trial of this case. We, therefore, hold that if there was error in the admission of the statement it was harmless.

Appellant further contends that if admission of Conroy's testimony was not per se reversible error, its admission coupled with the trial judge's refusal to permit rebuttal testimony as to the value of the subject property at the time Shell sold it resulted in substantial injustice to it. Sales of the land in question may be admissible to show market value, *Baltimore v. Brick Co.*, 80 Md. 458, 31 A. 423 (1895), but whether any particular sale is admitted rests in the sound discretion of the trial court. In *Baltimore City v. Schreiber*, 243 Md. 546, 551, 221 A. 2d 663 (1966), we stated:

> "There are a myriad of circumstances to be considered in each case in determining if the time the purchase price was paid was too remote to have any probative value in aiding the jury's ascertainment of present fair market value.

> Such circumstances include: degree of change in the condition of the property, changes in the condition of the surrounding property or in the character of the neighborhood, economic growth in the area, etc."

We have indicated that if there exists a question in the trial judge's mind as to the probative value of any sale, the better rule is to admit it, leaving the weight to be given to that sale to the jury in light of such distinguishing factors as may be brought to its attention by cross-examination or otherwise. This rule has been enunciated both with regard to sales of the land in question, *Baltimore City v. Schreiber, supra,* and also to comparable sales in the neighborhood, *Lustine v. State Roads Comm.,* 217 Md. 274, 142 A. 2d 566 (1958), but nowhere have we established a hard and fast standard either for admission or exclusion of such evidence. In the situation before us, where the neighborhood was admittedly a declining one, we hold it was not an abuse of discretion to refuse to accept testimony concerning the sale or mortgage of the property eight years earlier.

The probable basis of the trial judge's ruling admitting Conroy's statement was neither to prove the actual reason Shell left, nor in fact to show the highest use and value of the property in 1961, but to substantiate Conroy's opinion that the neighborhood had begun to deteriorate in 1961 and continued to deteriorate through the intervening years with its resulting effect on the use to which it could be put in 1969. In any case any possible prejudice caused by Conroy's statement could clearly have been rebutted by competent evidence by appellant that the neighborhood was not in fact "rough" in 1969, evidence apparently impossible to produce.

In substance, the instant case was one where the expert witnesses on opposing sides disagreed as to what the highest and best use of the subject property was in 1969, and arrived at different evaluations for the property because of this. The resolution of this variance was within

the province of the jury. See *State Roads Com. of Md.* *v. Novosel,* 203 Md. 619, 102 A. 2d 563 (1954).

*Judgment affirmed. Costs to* *be paid by appellant.*