599 A.2d 449

**STATE ROADS COMMISSION OF the STATE HIGHWAY ADMINISTRATION of the State of Maryland**

v.

**370 LIMITED PARTNERSHIP.**

**No. 28, Sept. Term, 1990.**

Court of Appeals of Maryland.

Dec. 23, 1991.

Ralph S. Tyler, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Andrew H. Baida, Edward S. Harris, Asst. Attys. Gen., Frank W. Wilson, Sp. Counsel, all on brief), Baltimore, for petitioner/cross respondent.

R. Edwin Brown and Rex L. Sturm (Laurie R. Gitajn, Brown and Sturm, all on brief), Rockville, for respondent/cross petitioner.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired), Specially Assigned.

McAULIFFE, Judge.

In this condemnation action the State Roads Commission of the State Highway Administration (the State) utilized statutory "quick-take" procedures to freeze an early date of valuation and to permit an immediate taking of land owned by 370 Limited Partnership (the Partnership) and needed by the State to construct Interstate Highway 370 in Montgomery County. As it turned out, however, there was nothing quick about the taking. The State did not file its formal petition for condemnation within one year of its initial filing; it did not occupy or exercise dominion over the property until nearly one and one-half years after the initial filing; it amended the original petition by adding four acres to the property being taken from the Partnership more than two years after the initial filing; and, the case did not come to trial until more than four years after the initial filing.

The principal bone of contention between the parties involves the proper valuation date. The Partnership contends the property was properly valued as of the date of trial. The State argues the proper date should be the date on which it amended the action, some two years before trial. Additionally, the parties disagree whether the Partnership is entitled to prejudgment interest on the difference between the amount originally deposited and the amount of the jury's verdict, and whether the trial judge erred in refusing to allow the State to call an expert as a rebuttal witness.

I.

On 9 October 1985, the State filed two "quick-take" petitions in the Circuit Court for Montgomery County, pursuant to §§ 8–318 to 8–331 of the Transportation Article, Maryland Code (1977, 1991 Cum.Supp.). The petitions des-

ignated for taking parts of two unimproved tracts of land owned by or under contract to the Partnership. From the larger tract (the Cornelius tract) the State took 15.93 acres, and from the smaller tract (the PEPCO tract) the State took 7.62 acres. Pursuant to the provisions of § 8–323, the State deposited at the time of the initial filings $3,122,600 for the Cornelius tract and $1,495,000 for the PEPCO tract, representing the State's estimate of fair compensation for the takings. The funds were withdrawn by the Partnership soon thereafter. Although this filing and the deposit entitled the State to immediate possession of the property, it did not take actual possession until sometime in March of 1987.

Both cases were referred to the county board of property review pursuant to § 8–326, but no action was taken by the board. On 10 October 1986, just over one year after the initial filings, the State filed formal condemnation petitions pursuant to §§ 8–318 to 8–331 of the Transportation Article. In May 1987, the two cases were consolidated for trial. Trial dates established from time to time were continued at the request of one or the other of the parties.

On 6 November 1987, the State filed an "Amended Condemnation Petition" taking an additional 4.095 acres from the PEPCO tract in order to construct a bridge across the interstate highway. The bridge was necessary to provide access to remainder portions of both tracts that would otherwise have been "landlocked" by the taking. Virtually all of the Partnership's land was zoned for light industrial development. The initial taking bisected both parcels and cut off all industrial access to the northern portions. Although those portions of the remainder had some value because of residential access that was not disturbed, the State determined that the cost of a bridge would be less than the damage to the portions of the remainder. Concurrent with the filing of the Amended Condemnation Petition, the State deposited an additional $4,346,400 for the benefit of the Partnership, which the Partnership withdrew.

In February of 1988, the State filed a Notice of Amendment, stating that the additional funds deposited in Novem-

ber of 1987 were intended to be allocated in part to each tract. The State's amendment explained that only a portion of the funds was for the additional four acres taken and that the remainder reflected the State's revised estimate of the amount necessary to provide just compensation for the total takings from both tracts.

On 26 October 1988, five days before a scheduled trial, the State filed a "Third Amended Condemnation Petition," characterizing the condemnation action as one generally brought pursuant to Title 8 of the Transportation Article and Title 12 of the Real Property Article and alleging that the money it had deposited exceeded the fair market value of the taking. At this point, there was a disagreement between the parties as to the appropriate valuation date, and the State filed a motion pursuant to Rule 2–502 for a pretrial determination of that point of law. On 30 June 1989, the circuit court determined that the property should be valued as of the trial date. The State then requested a pretrial ruling that the Partnership would not be entitled to prejudgment interest. The court held that it would not allow prejudgment interest because the trial date valuation gave the Partnership the benefit of the appreciation in value of the land.

The State filed an additional pretrial motion, opposed by the Partnership, seeking to permit one of its expert appraisers, Robert W. Williams, Jr., to remain in the courtroom during trial. The court ruled that Williams could remain in the courtroom during the testimony of non-expert witnesses, but stated that Williams would be subject to questioning by both sides before he would be eligible to testify as a rebuttal witness. On the last day of trial, the court determined that nothing in Williams' opinion was derived from the testimony he had heard in the courtroom, that his evidence was cumulative, and that the Partnership had been unfairly deprived of an opportunity to prepare for his testimony. The court therefore declined to permit Williams to testify as a rebuttal witness.

The jury awarded $19,052,580.99 to the Partnership as just compensation for the property taken and damage to the remainder. The State noted an appeal to the Court of Special Appeals, and the Partnership cross-appealed on the issue of prejudgment interest. The Partnership filed a petition for writ of certiorari, and the State filed a conditional cross-petition. We granted both petitions before the case was considered by the Court of Special Appeals.

## II. *Valuation Date*

The first question before this Court concerns the appropriate valuation date of the property taken by the State. The State contends that § 12–103 of the Real Property Article, Maryland Code (1974, 1988 Repl.Vol.) applies. That section provides:

> Unless an applicable statute specifies a different time as of which the value is to be determined, the value of the property sought to be condemned and of any adjacent property of the defendant claimed to be affected by the taking shall be determined as of the date of the taking, if taking has occurred, or as of the date of trial, if taking has not occurred.

The Partnership insists that § 12–103 is inapplicable by its own terms, because "an applicable statute specifies a different time as of which the value is to be determined." That statute, the Partnership says, is § 8–330 of the Transportation Article, which provides:

> If, within 1 year after payment is made under § 8–323 of this subtitle, the Commission fails to ascertain the entire amount to be paid for the property and acquire title to it by deed or condemnation or, within that same 1–year period, fails to file timely a petition for condemnation as required by the Maryland Rules, then the fair value of the property shall be the greater of the values determined as of:
>
> (1) The date the title to the property is acquired; and
>
> (2) The date the payment was made under § 8–323 of this subtitle.

The trial court ruled that according to the plain language of these statutes, § 8–330 of the Transportation Article was applicable, and the State was not entitled to the earlier valuation date because the formal petition for condemnation was not filed until after the one-year deadline.

The State argues that the legislature did not intend § 8–330 to apply "where the State did not take physical possession of Partnership's property until long after it initiated condemnation proceedings by making payment under § 8–323." The purpose of § 8–330, according to the State, is to prevent unreasonable delay between the actual taking of the property and the filing of a formal condemnation action. Thus, the State reasons, where the filing of a formal condemnation petition was not unreasonably delayed beyond the actual taking of the property or where, as here, the filing of the formal petition preceded the actual taking, § 8–330 should not apply. We do not agree.

The plain and unequivocal language of § 8–330 makes it clear that if the State elects to use the quick-take procedure established by §§ 8–318 through 8–331 of the Transportation Article it must, within one year after payment is made under § 8–323, either acquire title to the property or file a formal petition for condemnation in order to be entitled to the "time of taking" valuation prescribed by § 12–103 of the Real Property Article. If the State accomplishes neither of these objectives within the one-year period, the property owner is entitled to have the property valued at the time of trial or at the time of payment under § 8–323, whichever is greater.

In *State Roads Comm'n v. Orleans*, 239 Md. 368, 211 A.2d 715 (1965), this Court construed the immediate precursor of § 8–330, Art. 89B, § 18 of the Maryland Code (1957, 1964 Repl.Vol.). The State argued in *Orleans* that the legislature intended the date of actual taking and not the trial date as the alternate valuation date under that section. This Court held that although the wording of the statute was ambiguous, the legislature intended to fix the trial date

as an alternate valuation date when the State missed the one-year deadline. *Id.* at 378, 211 A.2d 715. We have not departed from this interpretation of the statute. Moreover, as a part of the Code revision process, the language of Art. 89B, § 18 that created the ambiguity was deleted, so that § 8–330 now precisely reflects the interpretation the Court announced in *Orleans*.

The State argues that our holding in *Orleans* may be distinguished because in that case there was an actual taking soon after the initial filing and deposit. That fact, however, had nothing to do with our holding. We were concerned in *Orleans* with the date the legislature meant to establish as an alternate valuation date when the one-year limitation was missed. It was not suggested by the State in that case that there was any ambiguity in the meaning of the words selected by the legislature to trigger the running of the one-year period. Indeed, there is no ambiguity or room for interpretation. The legislature established the beginning of that one-year period in this type of quick-take action as the date "payment is made under § 8–323 of this subtitle." That language cannot be read to mean the date thereafter when the property was actually taken. This Court is not free to "rewrite a statute merely because of some judicial notion of legislative purpose." *Kaczorowski v. City of Baltimore*, 309 Md. 505, 516 n. 4, 525 A.2d 628 (1987). *See also Simpson v. Moore*, 323 Md. 215, 223, 592 A.2d 1090 (1991).

■ The State had a choice of two types of "quick-take" actions when it filed this case. It could have filed a "quick-take" proceeding pursuant to §§ 8–334 through 8–339 of the Transportation Article (a Part IV proceeding); or, it could have filed, as it did, a "quick-take" proceeding pursuant to §§ 8–318 through 8–331 of the Transportation Article (a Part III proceeding). Had it filed a Part IV proceeding, § 12–103 of the Real Property Article would have applied, and the valuation date would have been the date the State took possession of the property and lawfully appropriated it for a public purpose. *See* § 12–102 of the Real Property

Article; *Hardesty v. State Roads Comm'n,* 276 Md. 25, 29–30, 343 A.2d 884 (1975).[1]

By filing pursuant to Part III, the State gains a significant potential advantage. It may "freeze" the value of the property as of the moment it files the plats and informal petition and deposits an amount of money reflecting the estimated value of the land. *See* § 8–330 of the Transportation Article; *State Roads Comm'n v. Pumphrey,* 260 Md. 633, 643–44, 273 A.2d 81 (1971); *State Roads Comm'n v. Orleans, supra,* 239 Md. at 372, 211 A.2d 715. A Part IV proceeding, although also permitting entry and construction whenever the Commission desires, will not freeze the valuation date until there is an actual appropriation of the property. With the potential advantage inherent in utilizing a Part III proceeding, however, there is also a danger. If the Commission does not, within one year of payment, acquire title to the property or file a formal Petition for Condemnation, the alternate valuation date of § 8–330 will come into play, and the property owner will be entitled to valuation as of the date of trial.

The State here opted for a Part III proceeding. Each initial filing as well as the amendment of 6 November 1987 recited that the proceedings were being brought "under the provisions of Sections 8–318 to 8–331 of the Transportation Article." The filing fulfilled all the requirements of a Part III proceeding. *Compare State Roads Comm'n v. Pumphrey, supra,* 260 Md. at 648–50, 273 A.2d 81 (Commission could not have been proceeding under "quick-take" provisions because filing did not comply with statutory requirements for those procedures).

■ The State argues that it could have abandoned the initial condemnation action and filed new proceedings to avoid valuation at the date of trial. We need not consider

---

1. Under the particular facts of this case, the State suggests the valuation date would have been even later, because the property owner would be entitled to have the property valued as of the last substantial amendment, 6 November 1987.

whether the State might have taken such action and the effect thereof. The short answer is that it did not. Moreover, we point out that it had no right to abandon the proceedings after it had actually taken the property in March of 1987. Maryland Rule U26 c(1). In this case, the State filed proceedings and actually appropriated property belonging to the Partnership pursuant to the provisions of Part III of Title 8 of the Transportation Article. Accordingly, Section 8–330 applies.

■ The State has a fallback argument. It contends that even if Section 8–330 applies, the trial date valuation should not have been applied to the 4.095 acres taken as a result of the 6 November 1987 amendment. Had the State taken this position at trial, we would have agreed. It did not. The trial judge broached this question during the hearing of the pretrial motion to establish the valuation date. He specifically suggested that even if the Partnership were correct concerning a trial date valuation for the original takings, the State would probably be entitled to the earlier valuation date for the additional 4.095 acres. Apparently for tactical reasons, and to bolster its argument that the November 1987 date was the appropriate date of valuation for all the property, the State resisted separate valuation dates. We will not now grant the State relief which it expressly rejected at the trial level.

### III. *Rebuttal Evidence*

The State contends that the trial judge erred when he did not allow one of its experts, Robert W. Williams, Jr., to testify as a rebuttal witness. The State maintains that Williams was qualified to testify as an expert and that his proffered testimony was proper rebuttal because it addressed a method of appraisal utilized by the Partnership's experts, but not by the experts called by the State.

The Partnership did not contest Williams' qualifications as an appraiser. It did, however, both before trial and at the time Williams' testimony was offered, strenuously ob-

ject on the ground that the State was employing a strata-
gem calculated to deprive the property owner of any reason-
able opportunity for pretrial discovery or consideration of
the expert's opinion.

The first move in the chess match involving Williams was
taken by the State. It filed a pretrial motion to permit
Williams to remain in the courtroom during trial so that he
might render an opinion based on testimony given at the
trial. The Partnership opposed the motion, alleging that all
operative facts needed by the witness to form an opinion
were immediately available to him. The Partnership also
filed a motion *in limine* requesting that Williams not be
permitted to testify because the State had not listed him as
an expert in its answers to interrogatories, had not provided
any report or information concerning his opinion, and was
intentionally preventing Williams from forming an opinion
in order to "contravene the policy underlying discovery and
violate fundamental principles of fairness." At the hearing
of the motions, held as the trial began, the trial judge said
he was "inclined to agree that there is an unfairness of
having an expert where you don't have his opinion and you
don't have the information that might provide cross-exami-
nation." He ruled, however, that Williams would be al-
lowed to remain in the courtroom during the testimony of
factual witnesses, but that before Williams would be per-
mitted to testify, both parties would have to be given an
opportunity to talk to him. The judge did not rule on the
Partnership's motion *in limine.*

■ At the conclusion of the Partnership's case, the State
asked to call Williams as a rebuttal witness. The Partner-
ship objected to Williams being permitted to offer any
opinion as to value:

> PARTNERSHIP'S ATTORNEY: The question, Your
> Honor—he isn't even entitled to testify to value because
> he was asked on deposition if he had value. Four days
> before the case started he was asked if he had an opinion
> of value and he said no he did not. He filed no report.
> He was asked if he read the reports of other appraisers

and he said he had not and he hadn't been in Court and he wasn't allowed to be in court when they testified.

THE COURT: I am just going to find out what his opinion is and what the basis is and I will make a ruling on that.

The trial judge directed that Williams take the stand for questioning out of the presence of the jury. Williams testified he had not formed an opinion of value before trial. Although it was represented earlier to the court that Williams had been given information and documents by the State and had attended meetings with officials and apprais-ers, Williams testified he had not been asked to form an opinion until he heard the witnesses at trial. Williams testified that he had gained new information by listening to the witnesses. The trial judge questioned Williams closely concerning his ability to form an earlier opinion:

THE COURT: All I am trying to determine is I guess why weren't you in a position before the trial to render an opinion so that everybody could have been aware of it in time to cross-examine you about. And is there something special you learned by sitting in court that you weren't in a position to give an opinion earlier. I guess that is what I am looking for.

MR. WILLIAMS: That is a good question.

THE COURT: I mean, I don't like people lying in the weeds and then coming out with an opinion at the last minute.

At the conclusion of the inquiry, the trial judge found that Williams' proposed testimony was not based upon what he had heard in the courtroom. The judge concluded that Williams "already [had] the basic facts ... to form the opinion" before trial began. He said Williams "should have rendered his opinion and given the defendants a copy of his written opinion and that way they would have the opportu-nity to be prepared to rebut what he says." The court further concluded that Williams' appraisal methodology ba-sically incorporated the approach taken by the State's other appraisers.

The trial judge did not abuse his discretion when he refused to allow Williams to testify. He found, as the Partnership had earlier alleged, that the witness could have formed an opinion on the information available before trial and that it would be unfair to deny the property owners any meaningful pretrial discovery by the expedient of having an expert withhold formulation of an opinion that he should have been fully prepared to express.

The issue involved here does not necessarily turn on the State's attempt to use Williams as a rebuttal witness, although that decision certainly compounded the problem. Had the State attempted to use Williams at the conclusion of its case in chief, the problem would have been very much the same—the property owner would have been unnecessarily denied that which it should have had. The requirements of Maryland Rule 2–402(e), and of the pretrial order in this case which required the exchange of reports of expert witnesses, may not be so easily frustrated.

█ We gather as well from the remarks of the trial judge that he believed Williams' testimony was not proper rebuttal. Professor McLain summarizes the proper uses of rebuttal evidence as follows:

Generally, a party is required to put on all known evidence relevant to his or her claim in the case in chief, so that the opponent may respond in the case in defense. Rebuttal is to be reserved for evidence refuting matters that were brought up for the first time in the case in defense. Proper rebuttal evidence explains, replies to, contradicts, or impeaches new evidence presented by the opposing party in his or her case.

L. McLain, *Maryland Evidence* § 300.2 at 139 (1987) (footnote omitted).

The property involved in this case was unimproved. Accordingly, all the appraisers used the "market approach"—basically establishing the value of the land by examination of sales of comparable property and adjusting those values for time of sale and other relevant factors. A potential

complication arose in this case because of agreements the Partnership had entered into with the City of Gaithersburg to secure annexation and zoning of the property. The State's appraisers observed that as part of the agreements, entered into before the filing of any condemnation petitions, the Partnership had agreed to limit development on the entire 82 acre tract (PEPCO and Corneilus parcels) to 1,150,000 square feet of building space. The State's appraisers noted that the Partnership had thereafter sold two parcels of the tract not involved in the taking, totalling about 47 acres, and by binding covenants had committed 950,000 units of development to those two parcels, leaving only 200,000 units for the rest of the tract. Reasoning that the residual land had been disproportionately denuded of development rights, the State's appraisers down-graded its market value.

The Partnership's appraisers made no adjustment for development rights. The Partnership contended that the proposed taking for Interstate 370 had been a matter of record at the time of annexation, and that the City and the Partnership had negotiated maximum development rights for that portion of the property which they realistically expected would be developed, exclusive of the area to be taken. Thus, the Partnership reasoned, the recital of development rights in the annexation agreements should have no impact on the value of the land.

Williams' testimony indicated that although he was utilizing a square foot comparable sales valuation approach, as had the Partnership's experts, he was making an adjustment for development rights, as had the State's experts.[2] The trial judge concluded that Williams' opinion followed basically the same approach as that of the other State's experts:

---

2. Williams also proposed to introduce an adjustment factor not utilized by any of the other experts—a diminution in value for the delays in development required by projected staging of improvements to nearby roadways. This additional factor would not have qualified his testimony as proper rebuttal.

THE COURT: .... I just don't think it is based—it is based on the FARs [3], just like the others. That is what I get. He is putting it in a different way.

So viewed, the testimony did not qualify as proper rebuttal.

## IV. *Prejudgment Interest*

Finally, we address the Partnership's contention that it was erroneously denied prejudgment interest, which it claims is mandated by the governing statute.[4] The State argues, and the court below agreed, that the Partnership has been fully compensated by the application of the trial date valuation, through which the owner has received the benefit of the property's increase in value over time. The State contends that awarding prejudgment interest in such a case would result in unjust enrichment for the Partnership, a result neither constitutionally required nor contemplated by the Legislature.

This precise issue was examined recently and at length by Chief Judge Wilner, writing for the Court of Special Appeals in *State Roads Comm'n v. Cornell Co.*, 85 Md.App. 765, 584 A.2d 1331 (1991). The Court of Special Appeals reviewed the constitutional requirement of just compensation and the statutory scheme established for condemnation petitions, distinguishing between conventional and "quick-take" proceedings. The Court noted that the overriding constitutional requirement is that " 'the property owner is to be put in the same position monetarily as he would have occupied if his property had not been taken.' " *Cornell,*

---

3. The parties and their experts referred to the permitted units of development as FARs, an acronym for "floor area ratio."

4. Section 8–331 of the Transportation Article, Maryland Code (1977) provides as follows:

    At the conclusion of all proceedings, the Commission shall pay to the property owner:

    (1) Any excess of the final award over the amount paid under § 8–323 of this subtitle; and

    (2) Interest on the excess from the date of payment under § 8–323 of this subtitle at the rate of 6 percent a year.

*supra*, 85 Md.App. at 776, 584 A.2d 1331, quoting *King v. State Roads Comm'n*, 298 Md. 80, 84, 467 A.2d 1032 (1983).

■ The Court went on to state that in conventional condemnations, where the property is not actually taken until the fair value has been judicially determined, there is no constitutional entitlement to prejudgment interest. *Cornell, supra*, 85 Md.App. at 777, 584 A.2d 1331. In the usual "quick-take" condemnation, on the other hand, the fair value of the property—calculated as of the time of the filing or taking—is not judicially determined until some time later. As a result, prejudgment interest is constitutionally required in order to compensate the owner for the time value of the property taken. *Id.* In a situation like that presented in *Cornell* and in this case, where the land previously taken was valued as of the date of trial, and there has been a significant appreciation in value, we agree with the Court of Special Appeals that prejudgment interest is not constitutionally required. *See id.* at 778–79, 784, 584 A.2d 1331.

■ The Court of Special Appeals was careful to stress, however, that the constitutionally required just compensation

> is a minimum, not a maximum entitlement. The Legislature cannot *require* an owner to accept less, although it is free ... to provide for more.

*Id.* at 784, 584 A.2d 1331 (emphasis in original). The Court observed that the Maryland legislature, through its enactment of §§ 8–330 and 8–331, has in fact provided for a greater payment to be made to property owners when the State fails to file a formal condemnation petition within one year of the initial filing. *Id.* After thoroughly examining the history behind the consecutive statutory provisions allowing for trial date valuations in some cases and for unconditional prejudgment interest awards, Chief Judge Wilner concluded that the legislature contemplated situations in which both sections would apply:

> Sections 8–330 and 8–331 represent, in effect, sanctions in the event the Commission fails in its duty to act expedi-

tiously, as it plainly did in this case. . . . [T]hose sanctions take the form of requiring additional payment to the property owner subjected to the Commission's lack of diligence, of requiring the Commission to pay him more than he would otherwise be entitled to receive. Sanctions of that nature are common and legitimate.

*Id.* at 783, 584 A.2d 1331. We endorse the sound analysis of the *Cornell* Court and hold that the trial court erroneously disregarded the statutory command to award prejudgment interest notwithstanding the application of the trial date valuation.

■ The State further contends that if the Partnership is found to be entitled to any prejudgment interest, it is payable only from the time of the actual taking and not from the date of the initial deposit. This argument also ignores the clear language of § 8–331, which mandates payment of "[i]nterest on the excess *from the date of payment under § 8–323* of this subtitle at the rate of 6 percent a year" (emphasis added). We hold, therefore, that the application of the trial date valuation set forth in § 8–330 does not preclude the Partnership from receiving the prejudgment interest payable under § 8–331 from the date of deposit.[5]

## V.

For the reasons expressed above, we hold that the trial judge correctly applied a trial date valuation based on the clear language of § 8–330 and the State's failure to file formal condemnation petitions within one year of the initial

---

**5.** For the same reasons expressed in *Cornell,* the Partnership is entitled to the statutory compensation sought; an interest rate greater than 6 percent, which may be constitutionally required for a condemnee adopting a "just compensation" approach, is not available to one who seeks the greater relief available by statute. *See State Roads Comm'n v. Cornell Co.,* 85 Md.App. 765, 784, 584 A.2d 1331 (1991). Therefore, no greater interest rate is applicable unless the Partnership can show that the statute, as applied, is unconstitutional, that is, that the trial date valuation and the statutory 6 percent prejudgment interest together do not constitute just compensation.

"quick-take" petitions. We find that the trial judge was well within his discretion in excluding the testimony of an expert appraiser proffered by the State as a rebuttal witness. Finally, we hold that the trial court incorrectly declined to award the prejudgment interest mandated by statute.

JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THAT COURT FOR DETERMINATION AND AWARD OF PREJUDGMENT INTEREST. COSTS TO BE PAID BY THE STATE ROADS COMMISSION OF THE STATE HIGHWAY ADMINISTRATION.