811 A.2d 869

**BERN–SHAW LIMITED PARTNERSHIP**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE.**

**No. 2363 Sept. Term, 2001.**

Court of Special Appeals of Maryland.

Dec. 3, 2002.

314

316

John C. Murphy (John Cannan on the brief), Baltimore, for appellant.

Andrew G. Bailey, Principal Counsel and Elva E. Tillman, special Solicitor (Thurman W. Zollicoffer, Jr., City Solicitor on the brief), Baltimore, for appellee.

Argued before JAMES R. EYLER, BARBERA, and CHARLES E. MOYLAN, JR. (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

On October 3, 2000, the Mayor and City Council of Baltimore, appellee, filed a petition for condemnation and a petition for immediate possession and title in the Circuit Court for Baltimore City. The petition was to acquire property known as 324–326 W. Baltimore Street, owned by Bern–Shaw Limited Partnership, appellant. The acquisition was part of the West Side Redevelopment Project in Baltimore City. Appellee deposited $234,000 with the court, the higher of two appraisal values it had obtained.

On December 10–12, 2001, a jury determined the value of the property to be $140,000. Appellant filed a motion for new trial, which was denied. Appellant noted an appeal to this Court.

The property was improved by a five-story building over 100 years old. When taken by appellee, the building was occupied by a photography studio on the first floor, an apartment on the second floor, a storage area on the third floor, and a sewing machine company on the fourth floor. Appellee evicted the tenants and turned off the electricity. At the time of the trial, the building was full of trash, and it was infested with rats. The jurors viewed the first two floors of the building.

Appellee called two expert witnesses to testify as to value. One testified that the value of the property was $225,000, and

the other testified that the value was $234,000. Appellant called two expert witnesses to testify. One witness testified that the value was $500,000, and the other testified the value was $513,000. On cross-examination, appellant's representative testified, over objection, that appellant purchased the property in 1982 for a price of $85,000.

During trial, appellee stated that it intended to call a civil engineer as an expert rebuttal witness. Appellant objected that the witness had not been disclosed in a timely manner, but the court ruled that appellant could depose the witness and the witness could then testify.

## Questions Presented

The questions, as phrased by appellant, are:

1. Was it error to allow into evidence an 18–year–old sale, unadjusted to account for the increase in real estate prices over 18 years?
2. Was it error to allow the jury to view the interior of the property when, as a result of the City's quick take action, it was filled with trash, the electricity was off, and rats were running around freely inside the property?
3. Was it error to deny a new trial when it was discovered after the trial that, during the view, several members of the jury had been frightened by rats and had fled from the second floor?
4. Was it error to allow the testimony of an expert whose existence and report were only disclosed on the last day of trial and who testified as to the condition of the building with no analysis as to what effect, if any, the condition had on fair market value?
5. Should the jury verdict have been reversed when there was no evidence to support it, by way of expert testimony of the four appraisers or of any comparable sale, other than the unadjusted 18–year–old sale?
6. Was the owner denied a fair trial when the City's expert witness removed photographs, introduced into evidence,

from the courtroom, and when the City subsequently discovered where they were but did not notify the court of their location in time for the owner's witness to use them in his testimony?

## Discussion

### 1.

■ Appellant argues that it was error to allow an eighteen-year-old sale into evidence because it was not relevant to establish the value of the property in this quick-take action. Appellant relies on the Maryland Pattern Jury Instructions (MPJI) and the cases cited therein: *State Roads Comm'n v. Adams,* 238 Md. 371, 209 A.2d 247 (1965); *Taylor v. State Roads Comm'n,* 224 Md. 92, 167 A.2d 127 (1961); *Lustine v. State Roads Comm'n,* 217 Md. 274, 142 A.2d 566 (1958). *See* Maryland Pattern Jury Instructions, Fourth Edition, MIC-PEL, MPJI–Cv 13:3(c)(3)(c) (2002).

The pattern jury instructions provide that *"as a rule of thumb only,* sales more than five years prior to the date of taking … can be excluded." *Id.* (emphasis ours). The cases referred to in the MPJI hold that the trial court should be given ample discretion to determine what sales are comparable to the property in question, making it clear that the five-year rule is simply a general guideline.

*State Roads Comm'n v. Adams,* 238 Md. at 378–79, 209 A.2d 247, and *Taylor v. State Roads Comm'n,* 224 Md. at 94–5, 167 A.2d 127, cite *Lustine* as the leading case in this area. In *Lustine,* 217 Md. at 277–78, 142 A.2d 566, a landowner and tenant both objected to condemnation of part of the subject parcel for use as a highway. At the trial, the landowner and tenant sought to introduce testimony by an expert relating to comparable properties used for similar purposes. *Id.* at 280, 142 A.2d 566. On appeal, the *Lustine* Court held that keeping the information relating to those properties out of evidence at the trial was "unduly restrictive." *Id.* The Court stated that the settled principle is that there is "considerable latitude in the exercise of discretion by the lower court in determining

comparable sales." *Id.* (citing *Patterson v. Mayor and City Council of Baltimore,* 127 Md. 233, 241, 96 A. 458 (1915); *Williams v. New York, P. & N. R. Company,* 153 Md. 102, 108, 137 A. 506 (1927)). The *Lustine* Court reasoned that

> real estate parcels have a degree of uniqueness which make comparability, one with the other, in a strict sense, practically impossible. We think it the better policy, where there are any reasonable elements of comparability, to admit testimony as to the sales, and leave the weight of the comparison for the consideration of the jury, along with such distinguishing features as may be brought out on cross-examination or otherwise.

*Lustine,* 217 Md. at 281, 142 A.2d 566.

 The sale objected to by the appellant in the case before us is comparable to the property being valued—they are, in fact, the same property. The eighteen-year-old sale is simply the sale pursuant to which the appellant acquired title. Such conveyances are generally recognized as admissible in condemnation cases. *See* 5 David Schultz, *Nichols on Eminent Domain* § 21.01[2] (3d ed.2001). Any differences in the condition of the building went to the weight of that evidence and were properly before the jury for consideration. *Lustine,* 217 Md. at 281, 142 A.2d 566. The appellant had ample ability to cross-examine the appellee's experts about the comparison and the property's value adjusted for time. In fact, on re-direct, appellant's counsel elicited testimony from appellant's representative that the sale eighteen years ago was an estate sale of the property "as-is." Appellant's representative also testified to extensive repairs made to the property by appellant.

 Relying on *Colonial Pipeline v. Gimbel,* 54 Md.App. 32, 43–44, 456 A.2d 946 (1983), appellant claims that when appellee offered the previous sale of the property eighteen years ago, it needed to adjust the sales price using the consumer price index or another method that would account for the age of the sale. The burden of proof to establish value, however, falls on neither party. *Solko v. State Roads Comm'n,* 82 Md.App. 137, 147, 570 A.2d 373 (1990) ("once the

necessity for the taking has been established, the focus of the fact finder is upon 'just compensation' which the State is required to pay for that taking. It matters not who bears the burden of proof as the concept has no place in the inquiry.") *Id.* at 147, 570 A.2d 373. *See Solko,* 82 Md.App. at 147, 570 A.2d 373. The party opposing the introduction of a sale for comparison can cross-examine the witness with respect to the age of the sale. *See Lustine,* 217 Md. at 281, 142 A.2d 566; *see also Hance v. State Roads Comm'n,* 221 Md. 164, 168, 156 A.2d 644 (1959).

In *Colonial Pipeline,* this Court addressed the admissibility of the purchase price of property for purposes of valuing it. *Colonial Pipeline,* 54 Md.App. at 41, 456 A.2d 946. The trial court allowed the owners of the property to elicit testimony from their expert about the purchase, which had occurred eighteen years prior to the trial. *Id.* at 34, 456 A.2d 946. The owner's expert in that case expressed his opinion as to the value of the eighteen-year-old sale and adjusted the price, using the consumer price index. *Id.* at 36, 456 A.2d 946. The condemnor's rebuttal expert stated that adjustments using the consumer price index were not accepted in the trade, and he gave his own valuation of the property. *Id.* On appeal, this Court indicated that adjustment of the sales price by an expert was evidence to be elicited on cross-examination and weighed by the jury. *Id.* at 40, 456 A.2d 946. We held that "although '[t]here is no fixed period of time in which the purchase price of property sought to be condemned should be either admitted or excluded from evidence,' the trial courts are given considerable latitude and discretion in this area." *Id.* (citing *Mayor and City Council of Baltimore v. Schreiber,* 243 Md. 546, 551, 221 A.2d 663 (1966)); *see also Belworth, Inc. v. Baltimore,* 256 Md. 369, 374, 260 A.2d 284 (1970). We stated that the trial judge should consider whether the original purchase price would be helpful to the jury, looking at such factors as changes in the property, changes in the surrounding neighborhood, and economic growth of the area. *Colonial Pipeline,* 54 Md.App. at 41, 456 A.2d 946. Although the sale in *Colonial Pipeline* was eighteen years old, it was

probative of the present value of the property because it had the identical location, nature, and size as the property in the condemnation action. *Id.* at 42, 456 A.2d 946. "The element of time was again a factor for cross-examination, argument and ultimate decision by the jury." *Id.*

Similarly, in the case before us today, the property conveyed by the sale eighteen years ago was identical in nature, size, and location. In accord with the holdings in *Colonial Pipeline* and *Lustine,* we conclude that the age of the sale went to the weight of the evidence, not its admissibility. The appellant had the opportunity to elicit testimony that highlighted how the property had changed subsequent to appellant's purchase. Neither party had the burden of proof, and either party could have asked its experts to adjust the sales price to reflect present value. Keeping in mind the trial court's discretion and appellant's opportunity to attack the weight of the evidence, we perceive no error.

**2.**

Appellant contends that the trial court erred by allowing the jury to view the interior of the property. Appellant argues that it was prejudiced because the jurors saw the property in a substantially different condition from that which would have existed prior to a sale on the open market. Appellant relies on the treatise, *The Appraisal of Real Property,* which defines fair market value as that price obtained "under all conditions requisite to a fair sale." *See* The Appraisal Institute, *The Appraisal of Real Property* (10th Ed.1992).

The definition of fair market value in Maryland eminent domain cases, however, is governed by statute. *See* Md.Code Ann., Real Property, § 12–105(b) (1996 Repl.Vol., 2002 Supp.) [hereinafter (RP)]. The statute defines fair market value as "the price as of the valuation date for the highest and best use of the property which a vendor, willing but not obligated to sell, would accept for the property, and which a purchaser, willing but not obligated to buy, would pay, excluding any increment in value proximately caused by the public project

for which the property condemned is needed." The statute further provides that fair market value includes "any amount by which the price reflects a diminution in value occurring between the effective date of legislative authority for the acquisition of the property and the date of actual taking, if the trier of facts finds that the diminution in value was proximately caused by the public project for which the property condemned is needed, or by announcements or acts of the plaintiff or its officials concerning the public project, and was beyond the reasonable control of the property owner." The drafters of this statute contemplated "acts or announcements by the condemnor [which] may have a significant influence on the property concerned [or] might cause property to be vacated or vandalized with a resultant depreciation in value. There may be ... a lapse of years between the initial project announcement and enactment of specific authority for the taking." *See Baltimore v. United Five & Ten Cent Stores, Inc.,* 250 Md. 361, 364–65, 243 A.2d 521 (1968) (discussing Senate Bill 8, from the 1963 session, which enacted former Article 33A, § 6, now contained in Real Property § 12–105); *see also Stickell v. Mayor of Baltimore,* 252 Md. 464, 473, 250 A.2d 541 (1969) (stating that the later statutory re-codification incorporates the case law discussing the former statutory text). In the case before us, there was no dispute as to the date of the taking, and there is no contention that the jury was not properly instructed with respect to the law of valuation.

Pursuant to Md. Rule 12–207, the jury "shall view the property" unless a waiver is signed by both parties. Although the appellant objects to the jury having viewed the property, neither party signed a waiver. The rule provides that during the view, a representative for each party can "point out the physical features, before and after the taking." *Id.* During the view in this case, appellant discussed at great length the condition of the property before and after the taking. The jury was instructed to consider the property as of October 2000, the time of the taking, and not the date of the viewing.

The jury is permitted to use its view of the property as real evidence and as a guide to determine how much weight to give to the testimony of experts and other witnesses. *See Brannon v. State Roads Comm'n,* 305 Md. 793, 801, 506 A.2d 634 (1986). In the case before us, there was testimony from which the jury could determine that some structural conditions they saw during the interior view existed prior to the taking. Appellee's expert, in discussing structural damage present in the building prior to the taking, stated: "The moisture has reached the first floor so it's obviously years and years of, of moisture entering the building and working on the wood and actually damaging the wood to the point where it is fatal and it's collapsing." On cross-examination, appellee's expert was questioned about the feasability of using the structure and stated that "the front half has a[sic] moderate damage and can be fixed up. The back half is already collapsing and is dangerous." The expert went on to state the floor was unstable for walking.

The testimony in this case gave the jury the tools it needed to decide if the condition of the property during the view was proximately caused by appellee or existed before the taking. This evidence, along with the oral remarks made during the view, allowed the jury to consider the appropriate fair market value of the property.

Appellant's reference to *State Toll Hwy. Auth. v. Grand Mandarin,* 189 Ill.App.3d 355, 136 Ill.Dec. 370, 544 N.E.2d 1145 (1989), is unpersuasive because that case focused on the accuracy of video testimony as a substitute for a jury view. In that case, the jury was unable to view the buildings because they had been razed. *Id.* at 1147. The damages depicted in the video were caused by the vacating tenants. *Id.* at 1148–49. In the case before us, there was ample testimony from which the jury could have concluded that a deteriorated condition existed prior to the taking. We find nothing in the view itself that unduly prejudiced appellant. We reiterate that, absent a waiver, Maryland Rules require the jury to view the property. *See* Md. Rule § 12–207.

3.

A decision on a motion for a new trial is reviewed for abuse of discretion, but an appellate court will rarely disturb the ruling. *See Buck v. Cam's Broadloom Rugs, Inc.,* 328 Md. 51, 57, 612 A.2d 1294 (1992); *see also Owens–Corning Fiberglas Corp. v. Baltimore City,* 108 Md.App. 1, 29, 670 A.2d 986 (1996). We have consistently given trial judges "the broadest range of discretion" when they are asked to consider "the core question of whether justice has been done." *Buck,* 328 Md. at 57, 612 A.2d 1294. If the verdict was "seriously distorted by information that should not have been before the jury," however, the trial judge may have little discretion to deny the motion for new trial. *Wernsing v. General Motors Corp.,* 298 Md. 406, 420, 470 A.2d 802 (1984).

Appellant claims that seeing rats during the view of the property caused fear in the jury, which was not contemplated by either party. Appellant argues that this fear is extraneous matter erroneously injected into the view, which obviously caused prejudice. We disagree.

Fear is not the type of extraneous matter contemplated by the Court of Appeals in *Wernsing. Id.* at 415, 470 A.2d 802 (citing Annot., 54 *A.L.R.2d* 738 (1957), updated by Annot., 31 *A.L.R.4th* 623 (non-legal extraneous matter can be dictionaries, encyclopedias, telephone books, pamphlets, etc.)). In *Wernsing,* the jury erroneously relied on the definition of "legal cause" it found in a dictionary, rather than the definition of "proximate cause" given to it by the court. *Id.* at 408, 470 A.2d 802. The Court of Appeals held that, by denying a new trial after discovering that the dictionary had been relied upon erroneously, the court abused its discretion. *Id.* The reasoning was that the new material injected into jury deliberations (*i.e.,* the differing definition) resulted in the jury's disregarding evidence that it would otherwise have considered. *Id.* at 420, 470 A.2d 802. The *Wernsing* Court determined the prejudicial effect of the dictionary based on jurors' notes to the bailiff, indicating which definition they had relied upon. *Id.* at 417–18, 470 A.2d 802. Comparing that definition to the

one offered by the judge revealed the prejudice that occurred and explained the verdict. *Id.* at 420, 470 A.2d 802.

The *Wernsing* facts differ substantially from those in the case at bar. The extraneous matter appellant claims was interjected into the proceedings was emotion. Jurors' views, their innate feelings, and human reactions to the evidence presented are impossible to extract from their deliberations. Emotions are natural by-products of processing the world around us. To attempt to regulate the emotions that the jury brings into its deliberations would necessarily bring about the "undermining of verdict finality" recognized by the Court of Appeals in *Wernsing* as historically prohibited by Maryland courts. *Id.* at 412, 470 A.2d 802 (citing *Oxtoby v. McGowan,* 294 Md. 83, 101, 447 A.2d 860 (1982); *Braun v. Ford Motor Co.,* 32 Md.App. 545, 551–54, 363 A.2d 562 (1976); *Christ v. Wempe,* 219 Md. 627, 641, 150 A.2d 918 (1959); *Williams v. State,* 204 Md. 55, 67–72, 102 A.2d 714 (1954); *Kelly v. Huber Baking Co.,* 145 Md. 321, 328, 125 A. 782 (1924); *Brinsfield v. Howeth,* 110 Md. 520, 530–31, 73 A. 289 (1909); *Browne v. Browne,* 22 Md. 103, 113–14 (1864); *Ford v. State,* 12 Md. 514, 546 (1859); *Bosley v. The Chesapeake Insurance Co.,* 3 G & J 450, 473 (1831)). We decline to attempt to separate the apprehension that may have been experienced during the internal view of the property from the facts gleaned and considered by the jury during that view. Moreover, unlike the jurors in *Wernsing* whose consideration of extraneous information necessarily required them to disregard evidence, the interior condition of the building in question was evidence the jury was required to view. *See* Md. Rule § 12–207.

 Appellant offers nothing more than speculation as to whether prejudice resulted from seeing the rodents. An affidavit by counsel for appellant swears that "Madam Forelady said she was frightened by a rat." Yet there is no evidence that this fear changed or impacted the forelady's deliberations or those of any other juror. Absent proof like the jury notes present in *Wernsing,* trial courts must evaluate the circum-

stances to determine if prejudice likely resulted from the alleged extraneous matter.

Where, as here, the precise extraneous matter is known but direct evidence as to its effect on the deliberations is not permitted, a sound balance is struck by a rule which looks to the probability of prejudice from the face of the extraneous matter in relation to the circumstances of the particular case. It is the function of the trial judge when ruling on a motion for a new trial to evaluate the degree of probable prejudice and whether it justifies a new trial. That judgment will not be disturbed but for an abuse of discretion.

*Wernsing,* 298 Md. at 419–20, 470 A.2d 802. The jury was instructed to consider the property as of October 2000, and not the date of the view. Absent an indication otherwise, we have no reason to believe that the jury did not follow this proper instruction.

The record indicates that the court considered the condition of the property during the view and decided that the view was not prejudicial to appellant. In these circumstances, we are to give the trial court broad discretion. *See Wernsing,* 298 Md. at 419–20, 470 A.2d 802; *Buck,* 328 Md. at 59, 612 A.2d 1294 (when the trial judge is asked in a motion for a new trial to "draw upon his own view of the weight of the evidence; the effect of an accumulation of alleged errors or improprieties by ... counsel," review of the ruling should be given broad discretion.). The Court of Appeals in *Buck* wrote that:

Because the exercise of discretion under these circumstances depends so heavily upon the unique opportunity the trial judge has to closely observe the entire trial, complete with nuances, inflections, and impressions never to be gained from a cold record, it is a discretion that will rarely, if ever, be disturbed on appeal.

*Id.* at 59, 612 A.2d 1294.

In the case before us, the court explained that it was "satisfied that [the appellant was] not prejudiced by that view or by the procedure that lead to that view and [appellant] got to do a lot of talking on that view and I'm satisfied that

substantial justice was done." We are satisfied that the court exercised its discretion and did not abuse it.

### 4.

Appellant contends it was error to allow James Plowden, an expert engineer, to testify to the condition of the property. Appellant argues that, because Mr. Plowden was not identified during discovery, he should not have been allowed to testify. Appellee argues that Mr. Plowden was a proper witness to rebut testimony by appellant's architect, Mr. Laug, about the structural stability of the property. Appellee indicates that Mr. Laug's testimony raised the issue of structural stability for the first time at trial, thereby opening the door for Mr. Plowden's rebuttal. Finally, appellee indicates its counsel was unaware of Mr. Plowden's report until after the court recessed on the day of Mr. Laug's testimony, explaining that Mr. Plowden was not retained in anticipation of litigation but was involved in the plans for renovation of the building.

Appellee correctly cites *Solko v. State Roads Commission, supra,* for the proposition that the trial court has discretion to allow rebuttal evidence. This Court "will not reverse for error in this determination unless the ruling of the trial court was 'manifestly wrong' and 'substantially injurious.'" *Id.* at 149, 570 A.2d 373 (quoting *Riffey v. Tonder,* 36 Md.App. 633, 646, 375 A.2d 1138 (1977)). The ruling of the trial court in the case before us was neither wrong nor injurious. *See Hepple v. State,* 31 Md.App. 525, 531–32, 358 A.2d 283 (1976) (defining "manifestly wrong" and "substantially injurious").

In *State Roads Commission of State Highway Administration v. 370 Limited Partnership,* 325 Md. 96, 109, 599 A.2d 449 (1991), a case cited by appellant, the Court of Appeals agreed with the trial court, which ruled that an expert appraiser in a quick-take action could not testify. The reasoning in that case, however, does not support appellant's position. *Id.* at 109–11, 599 A.2d 449.

In *370 Ltd. Partnership,* the State filed a pre-trial motion to allow an expert appraiser to observe the trial. *Id.* at 101, 107, 599 A.2d 449. Although the trial court recognized the inequity of identifying a potential expert but not giving the other side his opinion, the court allowed the appraiser to view the trial. *Id.* The court ruled that, if the expert were to be called for rebuttal, both sides would have an opportunity to question him outside of the presence of the jury. *Id.* at 101, 599 A.2d 449. At the close of the property owner's evidence, the State moved to call the appraiser as a rebuttal witness. *Id.* The appraiser claimed he only formed his opinion during the trial while observing the property owner's experts. *Id.* at 108, 599 A.2d 449. The trial court ruled that the expert could not testify because his opinion could have been formed before trial, based on information exchanged in discovery, and in addition, his testimony would have been cumulative. *Id.* at 108–09, 599 A.2d 449. The Court of Appeals affirmed and highlighted that the problem was with the expert "lying in the weeds and then coming out with an opinion at the last minute." *Id.* at 108, 599 A.2d 449. The Court of Appeals observed that the same problem would have existed had the expert been called in the State's case in chief rather than in rebuttal. *Id.* at 109, 599 A.2d 449.

Applying the reasoning in *370 Ltd. Partnership,* we find that it was not an abuse of discretion to allow Mr. Plowden to testify in the instant case. Unlike the appraiser in *370 Ltd. Partnership,* Mr. Plowden was not named before trial because appellee did not know it would need him. The information Mr. Plowden rebutted was introduced for the first time at trial. The reason the trial court in *370 Ltd. Partnership* kept the appraiser from testifying was because he had the information before trial and could have formed an opinion then. In contrast, Mr. Plowden did not "lie in wait" to render an opinion at the end of the trial because the information on which he based his testimony was not introduced in discovery. Unlike *370 Ltd. Partnership,* appellant is not claiming there would have been a problem with Mr. Plowden's testimony had he been called in appellee's case in chief.

Appellant objects to the lack of preparation time. That issue was also addressed by the Court in *370 Ltd. Partnership*. The Court stated that, had the expert appraiser been allowed to testify, both sides would have been able to question him outside of the presence of the jury. *Id.* at 101, 599 A.2d 449. In the case before us, the trial court permitted appellant to question Mr. Plowden before he took the stand.

The appellant cannot claim the same type of prejudice as the property owner in *370 Ltd. Partnership*. As the Court of Appeals stated in that case, "proper rebuttal evidence explains, replies to, contradicts, or impeaches new evidence presented by the opposing party in his or her case." *Id.* at 109, 599 A.2d 449 (citing L. McLain, *Maryland Evidence* § 300.2 at 139 (1987) (footnote omitted)). Because Mr. Plowden's testimony was used to rebut the structural stability evidence introduced by appellant, we conclude that the trial court did not abuse its discretion in allowing the testimony.

### 5.

Appellant claims there is no evidence to support the jury's verdict. We disagree. In *Bergeman v. State Roads Com.*, 218 Md. 137, 147, 146 A.2d 48 (1956), the Court of Appeals affirmed a judgment in a condemnation action that awarded less than the amounts testified to by the expert appraisers. In that case, the jury awarded $23,000 to the owner of the property despite the fact that the experts valued the property in the range of $26,588 to $48,000. *Id.* at 140, 146 A.2d 48. The Court of Appeals held that "the jury was 'not required to adopt a price fixed by other sales, but they consider it in connection with their own view of the land and the other evidence in the case.'" *Id.* at 144, 146 A.2d 48 (citations omitted); *accord Solko,* 82 Md.App. at 148, 570 A.2d 373; *State Roads Com. of State Highway Administration v. Parker,* 275 Md. 651, 671, 344 A.2d 109 (1975); *Greater Baltimore Consolidated Wholesale Food Market Authority v. Duvall,* 255 Md. 90, 97, 256 A.2d 882 (1969); *Lustine,* 217 Md. 274, 281, 142 A.2d 566 (1958).

Appellate courts review the sufficiency of the evidence in the light most favorable to the prevailing party. *Id.; accord Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 173, 122 A.2d 457 (1956); *State Roads Comm. of Md. v. Wood,* 207 Md. 369, 374, 114 A.2d 636 (1955); *Baltimore v. Smith & Schwarz Brick Co.,* 80 Md. 458, 473, 31 A. 423 (1895). Thus, as long as there are basic facts underlying the expert testimony or apparent during the view, on which the jury could base its verdict, it will not be disturbed on appeal. *Id.; accord Buck,* 328 Md. at 60–61, 612 A.2d 1294; *Redemptorist v. Wenig,* 79 Md. 348, 356, 29 A. 667 (1894) ("We cannot agree that there was no evidence from which the jury could find there was any diminution in the value of the land." (cited in *Pettit v. Commissioners of Wicomico County,* 123 Md. 128, 141, 90 A. 993 (1914), as the correct test for sufficiency of jury verdict in takings cases)).

The jury listened to the testimony of eight separate witnesses and saw the property. One of those witnesses was the appellant's representative who testified to the $85,000 price paid to acquire the property in 1982. We have already determined that the court did not err in admitting that testimony. Accordingly, there was sufficient evidence to support the verdict. *See also Leitch v. Anne Arundel County,* 248 Md. 611, 618, 237 A.2d 748 (1968) (appraisals from conflicting experts differed but jury was allowed to consider the initial acquisition sale to arrive at its figure); *accord Rollins v. Outdoor State Roads Comm'n,* 60 Md.App. 195, 203, 481 A.2d 1149 (1984); *Baltimore v. Smulyan,* 41 Md.App. 202, 209–10, 397 A.2d 198 (1979); *State Roads Com. of State Highway Administration v. Parker,* 275 Md. 651, 671, 344 A.2d 109 (1975); *Belworth, Inc. v. Baltimore,* 256 Md. 369, 374–75, 260 A.2d 284 (1970); *Holy Trinity Russian Independent Orthodox Church v. State Roads Com.,* 249 Md. 406, 408–11, 415, 240 A.2d 255 (1968). Appellant virtually acknowledges as much by its cite to 5 J.L. Sackman, *Nichols on Eminent Domain* § 17.1[4] (3d ed. Rev.2001), which states that "the jury may weigh all the evidence and use their best judgment. They are

not limited to the highest or lowest estimate of damage in evidence."

## 6.

Finally, appellant claims that it was denied a fair trial because photographs admitted into evidence were removed from the courtroom. These photographs, labeled plaintiff's exhibits 3, 4, and 5, were introduced at trial during the testimony of the first witness, Mr. Gilbert, one of appellee's appraisers. The photographs depicted the outside of the building, the back wall, the photography studio on the first floor, the second floor, and the fifth floor, as they existed in 1998, two years prior to the taking. Appellant's counsel did not mention the photographs on cross-examination or re-cross-examination of Mr. Gilbert. The photographs were inadvertently taken from the stand by Mr. Gilbert, without the knowledge of the clerk or the attorneys.

Thereafter, appellant's representative testified and referenced the pictures during his direct testimony. He was asked by his counsel to explain how the building came to be in the dilapidated condition that existed at the time of the jury view. Appellant's representative described how the first and second floor tenants, prior to the taking, had kept the premises in good repair and aided in fixing the windows and the roof. At that point, when appellant's representative wished to refer to plaintiff's exhibits 3 through 5 to demonstrate the condition prior to the taking, it came to the court's attention that the pictures could not be located. When the clerk could not find the photographs, counsel for appellant asked appellant's representative, "Well, explain, explain to the jury, you remember the photographs, what do they depict?" The witness proceeded to give twenty-five lines of testimony on their contents, and later elaborated on the significance of understanding the condition of the property before the taking. The witness highlighted the specific differences in the condition of the back wall of the building and reiterated his view that the vacating tenants caused significant damage when they removed their photographic equipment from the first floor. The witness

testified that appellant had made extensive repairs to the back wall, which was intact at the time of the taking. Appellant now argues that having the photographs on the stand would have enhanced its witness's testimony to such a degree that, without them, appellant has been denied a fair trial. We disagree.

The standard for determining on appeal if the appellant has received a fair trial was laid out by the Court of Appeals in *DeMay v. Carper*, 247 Md. 535, 233 A.2d 765 (1967):

to [the trial judge's] discretion customarily is left the choice of methods to protect the fair and unprejudiced workings of the judicial proceedings and his decision as to the effect of that choice upon the jury and only in the exceptional case, the blatant case, will his choice of cure and his decision as to its effect be reversed on appeal.

*Id.* at 540, 233 A.2d 765 (cited with approval in *Ferry v. Cicero*, 12 Md.App. 502, 508, 280 A.2d 37 (1971); *Kelch v. Mass Transit Administration*, 42 Md.App. 291, 400 A.2d 440 (1979)).

Appellant asserts in its brief that the condition of the back wall, as depicted in the photographs, was significantly different from its condition at the time of the view. Simply put, a hole in the back wall, present at the time of the view, was not depicted in the photographs.

We find no prejudice, however, based on the absence of these photographs during the testimony of appellant's representative. Appellant's representative fully explained the contents of the photographs that had already been seen by the jury. On December 12, 2001, the second and final day of the trial, Mr. Gilbert was contacted by appellee's attorney, and Mr. Gilbert returned the photographs, prior to closing argument. Yet, appellant's counsel made no reference to the photographs in closing. We perceive no error.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**